# RITCHIE v. McMULLEN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

No. 15. Argued November 10, 14, 1893. — Decided June 3, 1895.

In an action upon a foreign judgment, an answer admitting that "certain attorneys entered, or undertook to enter, the appearance of the defendant" in the action in the foreign court; and alleging that the judgment was entered without his knowledge, in his absence, and without any hearing; but not alleging that the attorneys were not authorized to enter his appearance in that action, or that he appeared and answered under compulsion, or for any other purpose than to contest his personal liability, is insufficient to show that the foreign court had no jurisdiction of his person.

Averments, in an answer to an action upon a foreign judgment, that it was "an irregular and void judgment," and "without any jurisdiction or authority on the part of the court to enter such a judgment upon the facts and upon the pleadings," are mere averments of legal conclusions, and are insufficient to impeach the judgment, without specifying the grounds upon which it is supposed to be irregular and void, or without jurisdiction or authority.

To warrant the impeaching of a foreign judgment because procured by fraud, fraud must be distinctly alleged and charged.

A judgment rendered by a court having jurisdiction of the cause and of the parties, upon regular proceedings and due notice or appearance, and not procured by fraud, in a foreign country, by the law of which, as in England and in Canada, a judgment of one of our own courts, under like circumstances, is held conclusive of the merits, is conclusive, as between the parties, in an action brought upon it in this country, as to all matters pleaded and which might have been tried in the foreign court.

THIS was an action at law, brought September 21, 1888, in the Circuit Court of the United States for the Northern District of Ohio, by James B. McMullen, a citizen of the State of Illinois, and George W. McMullen, a citizen of the Province of Ontario in the Dominion of Canada, against Samuel J. Ritchie, a citizen of the State of Ohio, upon a judgment for the

sum of $238,000, recovered by the plaintiffs against the defendant on February 26, 1888, in the Queen's Bench Division of the High Court of Justice for the Province of Ontario.

The petition alleged that by a contract in writing, dated January 13, 1886, the plaintiffs, being the owners of 210 first mortgage bonds of the Central Ontario Railway, a corporation of the Province of Ontario; for $1000 each, and of certain coupons thereof, amounting to the sum of $71,250, agreed to sell, and the defendant agreed to purchase, those bonds and coupons for the price of $210,000 of the fully paid-up stock of the Canadian Copper Company, a corporation of the State of Ohio; that on the same day, in part performance of the contract, the defendant accepted five bills of exchange for $5000 each, drawn by one of the plaintiffs, payable to the other plaintiff's order, at the Bank of Montreal at Picton in the Province of Ontario, on July 1, 1886, with an indorsement thereon that the five bonds of the Central Ontario Railway attached to the bills were to be delivered to the defendant upon his paying the acceptances; and it was agreed that the payment by the defendant of those bills should be considered as payment of a like sum upon the contract, and the delivery by the plaintiff of the bonds attached to the bills should be considered as a delivery of so many bonds under the contract.

The petition further alleged that before October 8, 1887, all things necessary to entitle the plaintiff to the performance of the contract had happened, and the plaintiffs were ready to perform it on their part, and the defendant neglected and refused to perform it on his part; and that on that day the plaintiff commenced an action in the Queen's Bench Division of the High Court of Justice for Ontario, "a duly and lawfully constituted court of record, having jurisdiction over all civil and criminal matters in and for that part of the Dominion of Canada called the Province of Ontario," and caused a writ of summons to be personally served upon the defendant on November 8, 1887; and that on November 28, 1887, the defendant "duly entered his appearance in said action in said court;" that that action was brought upon the contract aforesaid, and that the plaintiffs, in their statement of claim,

"duly delivered to said defendant or his duly constituted solicitors and attorneys, in accordance with the laws of said Province of Ontario," prayed for specific performance of the contract, or for damages for the breach thereof.

The petition further alleged that in that action, on November 28, 1887, the defendant, in accordance with those laws, delivered to the plaintiffs his answer, denying the allegations of the plaintiffs' claim; and averring that, before the making of the contract aforesaid, the plaintiffs jointly and the defendant were each the owners of a large number of the bonds of the Central Ontario Railway, and agreed, in order the better to effect a sale of all the bonds, that the plaintiffs' bonds should be assigned to the defendant, in order to enable him to deal with them as the apparent owner, accounting to the plaintiffs for their share of the proceeds; that the contract aforesaid was executed in order to carry out that understanding, and that, if it purported to be an absolute sale to him of the plaintiffs' bonds for a certain sum to be paid by him, did not faithfully express the agreement between the parties, and should be reformed; that it was no part of the agreement that he should pay the plaintiffs any money in respect of the assignment until he had sold the bonds and received the proceeds; that the defendant's acceptances were given solely for the plaintiffs' accommodation; and that the defendant had not sold any of the bonds, although he had used his best endeavors to do so.

The petition further alleged that on December 18, 1887, issue was joined upon that answer; that on February 29, 1888, that action came on for trial in said court, and judgment was rendered that the plaintiffs recover of the defendant the sum of $238,000, and costs; that the judgment was unreversed and unsatisfied, in whole or in part; and that, by reason of the premises, the defendant became indebted to the plaintiffs in that sum, with interest, and, although payment had been demanded, had not paid the same or any part thereof.

To this action on the judgment, the defendant filed an answer, containing the following statements:

The defendant "admits that on January 13, 1886, he entered

into a contract in writing with the plaintiffs "—a copy of which was made part of the answer, showing that it was a contract of sale and purchase, as alleged in the petition, and that the bonds and coupons were to be delivered, and the price paid, at the Bank of Montreal at Picton. "And he denies that he entered into any other contract in writing with them upon any subject or touching any matter in contention in this action.

" He admits that an action was commenced against him in the Province of Ontario, Canada, for the general purpose stated in the petition, and that service of a summons was in form made upon him in Summit County, Ohio, and that certain attorneys entered, or undertook to enter, the appearance of this defendant in said action.

"He admits that a formal, but an irregular and void judgment was entered up against him in said court on or about the 29th day of February, 1888, which judgment was entered without his knowledge and in his absence, and without any hearing whatever.

" And this defendant denies each and every other fact, statement and allegation in said petition.

" And for a further defence this defendant alleges that the said contract entered into between the parties was entered into for the purposes stated in his answer in said original action in the Province of Ontario, and for no other purpose; that the contract was altogether an accommodation contract, made between the parties with the full understanding and agreement that it was never to be performed between them ; that it was made for the accommodation and convenience of the plaintiffs, to enable them to make use of the bonds described in the petition, and to aid them in the raising of money thereon.

" And this defendant further alleges that the said plaintiffs did not, at the time stated in the petition, nor at any other time, ever undertake to or in fact perform said contract upon their part, or any part thereof. They never at any time demanded performance upon the part of this defendant of said contract, unless the bringing of said action was a demand of such performance. They never at any time tendered the bonds

or coupons in the contract and in the petition. mentioned to this defendant, and they never delivered any of the said bonds to this defendant, nor did they ever make delivery nor attempt to make delivery of said bonds in accordance with the terms of said written contract, the said plaintiffs well knowing at all times what the real purpose of said contract was, and that the same was not to be performed upon the part either of the plaintiffs or of this defendant.

"This defendant says that he was not present at the time that said pretended judgment was rendered; but he states the fact to be that there were no facts existing, or presented to the court, which justified such judgment; that no bonds nor coupons were brought into court for delivery to this defendant, nor are any bonds or coupons upon deposit in the office of the clerk of said court, or in any other depositary, to be delivered to the defendant upon the performance of said contract upon his part, nor is it in the power of the said plaintiffs, or either of them, to make such delivery."

The defendant further alleges that, if he were compelled to pay the judgment, he would be compelled to pay it without any consideration whatever; that by the wrongful act of the plaintiffs he was compelled to pay three bills of exchange of $5000 each, which the plaintiffs had delivered to *bona fide.* purchasers; that he never received but ten of the bonds; that the conditions of the contract were dependent conditions; and that the plaintiffs had not performed their part of the contract.

The defendant also "denies that any hearing occurred before said court;" and "denies that there was any showing made by the plaintiffs of their readiness or their ability to perform their contract; but says that said. judgment was irregular and without evidence, without performance upon the part of the plaintiffs, entered up against him in his absence, without his knowledge, and without any jurisdiction or authority on the part of the court to enter such a judgment upon the facts and upon the pleadings in said action."

The plaintiffs demurred to the answer, "because the same does not state facts sufficient to constitute a defence." The

Circuit Court sustained the demurrer, and rendered judgment for the plaintiffs for the sum sued for, with interest and costs. 41 Fed. Rep. 502. The defendant sued out this writ of error.

*Mr. Jeremiah M. Wilson* and *Mr. Samuel Shellabarger* for plaintiff in error.

*Mr. Samuel E. Williamson* for defendant in error.

Mr. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

The judgment of the Canadian court is, beyond all doubt, sufficient to support this action, unless it is successfully impeached. Testing the answer in this case by the rules laid down in *Hilton v. Guyot*, just decided, no adequate ground for impeaching that judgment is shown.

Upon this record, the Queen's Bench Division of the High Court of Justice of the Province of Ontario must be taken to have been a competent court, so far as the subject-matter or cause of action was concerned, to entertain jurisdiction of the action brought before it by the plaintiffs against the defendant. The petition in the present case alleges that the plaintiffs brought in that court, described as " a duly and lawfully constituted court of record, having jurisdiction over all civil matters" in and for the Province of Ontario, an action upon a certain contract in writing between the parties. The defendant, in his answer to this petition, expressly admits that " an action was commenced against him in the Province of Ontario, Canada, for the general purpose stated in the petition." The competency of the Canadian court must therefore be deemed to be admitted, and, indeed, was hardly denied at the bar.

Giving to the answer the construction, most favorable to the defendant, of setting up two distinct and independent defences, separated by the words, "And for a further defence," there is nothing in it to show that the Canadian court had not jurisdiction of the person of the defendant. The first part of the answer expressly admits that " certain attorneys entered,

or undertook to enter, the appearance of this defendant in said action." As it does not allege that the attorneys were not authorized to enter the defendant's appearance in that action, they must be taken to have been authorized by him to do so. *Osborn* v. *Bank of United States*, 9 Wheat. 738, 830; *Hill* v. *Mendenhall*, 21 Wall. 453; *Molony* v. *Gibbons*, 2 Camp. 502. The second part of the answer describes the defence, now undertaken to be made upon the merits of the case, as the one "stated in his answer in said original action in the Province of Ontario," thus clearly showing that he had not only appeared, but answered in that action. It is nowhere alleged that he appeared or answered in that court under compulsion, or for any purpose except to contest his personal liability. He must therefore be taken to have voluntarily submitted himself to the jurisdiction of the court.

The defendant, indeed, in the first part of his answer, alleges that the "judgment was entered without his knowledge and in his absence, and without any hearing whatever;" and, likewise, in the second part of his answer, "says that he was not present at the time that said pretended judgment was rendered," and "denies that any hearing occurred before said court," and "says that said judgment was irregular and without evidence," and "entered up against him in his absence, without his knowledge." But, as he had once submitted himself to the jurisdiction of the court, all these allegations and denials are quite consistent with the position, taken by the plaintiffs at the argument here, that the defendant, at the time appointed for the hearing, failed to appear and made default, and therefore no hearing or evidence was necessary to entitle the court to proceed to judgment.

The general averments, in the first part of the answer, that the judgment was "an irregular and void judgment," and, in the second part, that "said judgment was irregular," and, "without any jurisdiction or authority on the part of the court to enter such a judgment upon the facts and upon the pleadings in said action," are but averments of legal conclusions, and wholly insufficient to impeach the judgment, without specifying the grounds upon which it is supposed to be

irregular and void, or without jurisdiction or authority to enter it. *Cowan* v. *Braidwood*, 1 Man. & Gr. 882; *S. C.* 2 Scott N. R. 138.

To warrant the impeaching of a foreign judgment because procured by fraud, fraud must be distinctly alleged and charged. *White* v. *Hall*, 12 Ves. 321; *Wallingford* v. *Mutual Society*, 5 App. Cas. 685, 697, 701; *Ambler* v. *Choteau*, 107 U. S. 589, 591. This answer does not even contain a general charge that the judgment was procured by fraud, or any equivalent allegation. And the only matters specified, from which fraud is sought to be inferred, are those already considered, which have no tendency to prove it; and the knowledge which the plaintiffs had of the real purpose of the contract, which is referred to, not as a ground for charging fraud in procuring the judgment, but only as incidental to and in explanation of the allegation that the plaintiffs never tendered, or delivered, or attempted to deliver, any bonds to the defendant, in accordance with the written contract. To treat the loose and imperfect allegations of this answer as duly setting up a defence of fraud would be inconsistent with all precedent, and would ignore the duty of giving the other party notice of the defences which he must be prepared to meet.

By the law of England, prevailing in Canada, a judgment rendered by an American court under like circumstances would be allowed full and conclusive effect. *Scott* v. *Pilkington*, 2 B. & S. 11; *Abouloff* v. *Oppenheimer*, 10 Q. B. D. 295, 307; *Vadala* v. *Lawes*, 25 Q. B. D. 310, 316; *Nouvion* v. *Freeman*, 15 App. Cas. 1, 10; *Fowler* v. *Vail*, 27 Upper Canada C. P. 417, and 4 Ontario App. 267.

The defences set up in the answer to this action upon the Canadian judgment reduce themselves to an attempt, without any sufficient allegation of want of jurisdiction of the cause or of the defendant, or of any fraud in procuring that judgment, or of any other special ground for not allowing the judgment full effect, but upon general allegations setting up the same matters of defence which were pleaded and might have been tried in the foreign court, to reopen and try anew the whole merits of the original claim in an action upon the

judgment.    This, for the reasons stated in *Hilton* v. *Guyot,*
*ante*, 113, cannot be allowed.

Upon principle, therefore, as well as upon authority, comity
requires that the judgment sued on should beheld conclusive
of the matter adjudged.

*Judgment affirmed.*

MR. CHIEF JUSTICE FULLER concurring.

MR. JUSTICE HARLAN, MR. JUSTICE BREWER, and myself con-
cur in the judgment in this case, but not on all the grounds
stated in the opinion of the court.  ·Our views on the general
subject are indicated in the dissenting opinion in *Hilton* v.
*Guyot, ante,* 229.

MR. JUSTICE WHITE, not having been a member of the court
when this case was argued, took no part in its decision.