ALASKA COMMERCIAL CO. v. DEBNEY.

(Third Division.   Valdez.   December 8–29, 1904.)

No. 64.

1. JUDGMENTS—COMITY—FOREIGN JUDGMENTS—EFFECT.

The force and effect to be given to a foreign judgment when sued on in the courts of the United States is to be determined by what the Supreme Court of the United States terms "the comity of nations."

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, § 1443.]

2. SAME—RIGHT OF ACTION.

By the rule of the comity of nations, the same force and effect will be given to the judgments of a foreign country when sued on in the courts of the United States as that country gives to judgments of our courts when sued on there; the basis of such comity being reciprocity.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, § 1516.]

3. SAME.

In English courts full faith and credit is given to the judgments of the courts of the United States; they are held to be conclusive upon the merits. In French courts, however, they are admitted for no more than prima facie evidence of character upon the merits. Held, that the rule of comity gives English and French judgments a like and reciprocal weight when sued on in our courts. A Canadian judgment sued on in Alaska will be given full faith and credit as a cause of action, and treated as conclusive evidence of the matters adjudged therein, subject only to a defense for want of jurisdiction, mistake, or fraud.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, §§ 1519, 1520.]

4. PLEADINGS—AMENDMENTS—FOREIGN JUDGMENTS.

Plaintiff asked leave to file an amended complaint on two causes of action; the first upon an original debt due from the defendant in the Yukon Territory, and the second upon a Canadian judgment in favor of plaintiff against defendant upon the original debt. Held that, upon the rendition of the judgment, the original debt was merged therein, that plaintiff had but one cause of action, and that upon the judgment, and the amendment asked for was denied.

5. JUDGMENT—COLLATERAL ATTACK—JURISDICTION—PRESUMPTIONS.

It is presumed, as a general rule, that courts of unlimited jurisdiction have acted within the scope of their jurisdiction; that those facts or averments necessary to support their authority to render the judgment have been complied with or made. Held, the exception to this rule is that, where the record shows the facts or recites the averments, nothing additional will be presumed. Settlemier v. Sullivan, 97 U. S. 444, 24 L. Ed. 1110.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, §§ 933, 934, 937, 1471–1473, 1520, 1521; vol. 13, Cent. Dig. Courts, §§ 140, 141, 145.]

6. PROCESS—SERVICE—SUMMONS.

The statute of the Yukon Territory provides that service of summons in civil actions against a nonresident shall be made as follows: "In case any defendant is out of the Territories but has an agent, managing clerk or other representative resident and carrying on his business within the same, service of the writ of summons may be made on such agent, managing clerk or other representative." Defendant had previous to his leaving that territory given his brother a power of attorney "to transact any and all business relating to my interests in the Yukon Territory."

At the time of service of the summons on him as the agent, the brother was not engaged in carrying on any business for the defendant therein. *Held*, that the service on the agent was not such service as the Yukon statute contemplated, and that a judgment in personam against the defendant, based on such substituted service, was void for want of jurisdiction.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Process, § 92.]

On June 15, 1903, the plaintiff brought a suit before this court at Eagle, Alaska, to recover the sum of $6,519.50, interest and costs, from the defendant, upon a judgment rendered in the Territorial Court of the Yukon Territory, Canada, at Dawson, Y. T. The substance of the complaint is:

Paragraph 1 alleges that the plaintiff is a corporation organized under the laws of California; that it has complied with the requirements of the laws of Alaska relating to foreign corporations, and is engaged in business in Alaska.

"(2) That the defendant has been engaged in mining on the Yukon river, and is now a resident of the district of Alaska.

"(3) That during the years 1901–02, while defendant was carrying on mining operations on the Yukon river, aforesaid, he became indebted to the plaintiff in the sum of twenty-nine hundred and ninety-five ($2,995) dollars; the same being a balance for goods, wares, and merchandise sold and delivered to him by plaintiff.

"(4) That on September 15, 1900, at Dawson, in the Yukon Territory, Canada, the defendant made, executed, and delivered to one S. W. Milan, his promissory note for the sum of twenty-six hundred and ten and 69/100 ($2,610.69) dollars, which note was payable on September 15, 1902, at either San Francisco or Seattle, and was thereafter transferred to plaintiff, who is now the owner and holder thereof."

The fifth paragraph then alleges the existence of the Territorial Court of the Yukon Territory, Canada; that it was a "court of general jurisdiction, duly created under and by virtue of an act of Parliament of Canada"; that it "had jurisdiction in actions to recover money for debt unlimited, and had jurisdiction of the subject-matter of the action hereinafter men-

2 A.R.—20

tioned." The sixth paragraph alleges the commencement of an action in said court by this plaintiff against the defendant to recover on the account for goods sold and the note, and alleges the "filing in the office of the clerk of said court a statement of claim, upon which a writ of summons was issued, and which writ of summons, together with a copy of the statement of claim, aforesaid, was duly served upon said defendant, and that thereafter such proceedings were had in said action in said court that on the 25th day of November, 1902, a judgment for the sum of sixty-two hundred and seventy and 26/100 ($6,-270.26) dollars, together with costs, taxed and allowed at two hundred and forty-eight and 60/100 ($248.60) dollars, making a total of sixty-five hundred and nineteen and 56/100 ($6,519.56) dollars, was duly given and made by said court in favor of the above-named plaintiff and against the defendant herein." The seventh paragraph alleges that no part of that judgment has been paid, and that the legal rate of interest on judgments in Canada is 5 per cent. per annum. The prayer demands judgment in this court against the defendant for the sum of $6,519.56, interest and costs.

At the time the suit was filed in this court the property of the defendant at Valdez, Alaska, was attached. The affidavit in attachment in this case, provided for by section 136 of the Alaska Code of Civil Procedure, alleges that the defendant is indebted to the plaintiff in the sum of $6,519.56, with interest, "upon an expressed contract for the direct payment of money, viz., upon a certain judgment of the Territorial Court of the Yukon Territory, made and entered against the defendant in said court on the 25th day of November, 1902"; that it "is an actual, bona fide, existing debt, due and owing from the defendant to the plaintiff."

Thereafter the defendant appeared in the action, and filed his answer, denying all the allegations of the complaint, except that he admitted that he was a resident in Alaska. He also

moved to transfer the trial of the cause from Eagle to Valdez, at both which places this court holds terms, which motion was granted. On December 1, 1903, at Valdez, upon motion of the defendant, the court struck out paragraphs 2, 3, and 4 of the complaint as immaterial and irrelevant, and thereupon the defendant, by leave of the court, filed an amended answer, denying each and every allegation of the fifth, sixth, and seventh paragraphs, having admitted only the first, which alleged the corporate existence of the plaintiff.

The plaintiff asks leave to file an amended complaint, which sets out two distinct causes of action: First, alleging that during the years 1901 and 1902, at Dawson, Yukon Territory, Canada, the defendant became indebted to the plaintiff in the sum of $2,995 for goods, wares, and merchandise sold to him by plaintiff; second, alleging the making of defendant's note to S. W. Milan for $2,610.69 at Dawson, in the Yukon Territory, Canada, and its transfer to plaintiff and nonpayment; and, third, alleging "that on the 11th day of October, 1903, the plaintiff herein commenced an action in the Territorial Court of the Yukon Territory, Canada, which court is a court of general, inherent, and unlimited jurisdiction, to recover from the defendant upon the two causes of action hereinbefore alleged the sum of sixty-two hundred and fifty-two dollars and twenty-six cents ($6,252.26)," and then alleging the rendition of a judgment in that court on November 25, 1902, in favor of the plaintiff and against defendant on said counts in the sum of $6,519.56, alleging that no part thereof has been paid, and demanding judgment for that sum, interest and costs.

Thomas A. McGowan, J. W. Leedy, and Ostrander & Donohoe, for plaintiff.

Brown & Smith, for defendant.

WICKERSHAM, District Judge. The court will consider the main question in this case upon the defendant's objection

to filing the amended complaint. This question is: Can the plaintiff named in the Canadian judgment bring suit in this court upon its original causes of action, upon which the foreign judgment was based, and also upon the foreign judgment itself as a separate cause of action; or were the original causes of action merged in the Canadian judgment, so as to prevent their resurrection and use as original causes of action in the courts of this territory? A further objection is made to the proposed amendment, that it is an attempt to substitute a new and different cause of action on the account and note for the original cause on the foreign judgment upon which the attachment proceedings are based.

There is neither statutory enactment, constitutional requirement, nor treaty stipulation with England imposing jurisdiction upon the District Court of Alaska to enforce the decrees or judgments of Canadian courts. Whatever aid the courts of this territory render in enforcing such judgments must be guided and controlled by those rules of international comity and reciprocity which are recognized and announced as binding upon the United States by our national courts of highest resort. The guiding principles have been recently examined and carefully stated by the Supreme Court of the United States in two cases: Hilton v. Guyot, 159 U. S. 113, 16 Sup. Ct. 139, 40 L. Ed. 95, and Ritchie v. McMullen, 159 U. S. 235, 16 Sup. Ct. 171, 40 L. Ed. 133, and this court must apply them in this case as nearly as its understanding will permit. In the first of these controlling cases the court declares that, in the absence of a treaty, statute, or other written law—

"The duty still rests upon the judicial tribunals of ascertaining and declaring what the law is, whenever it becomes necessary to do so, in order to determine the rights of parties to suits regularly brought before them. In doing this the courts must obtain such aid as they can from judicial decisions, from the works of jurists and commentators, and from the acts and usages of civilized nations." Hilton v. Guyot, 159 U. S. 113, 163, 16 Sup. Ct. 139, 143, 40 L. Ed. 95.

The force and effect to be given to a foreign judgment when sued on in the courts of the United States is to be determined by what the Supreme Court terms "the comity of nations."

" 'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of any other persons who are under the protection of its laws." Hilton v. Guyot, 159 U. S. 163, 16 Sup. Ct. 143 (40 L. Ed. 95).

After defining the limits of the jurisdiction of courts of the United States under the law of "the comity of nations," the Supreme Court in these cases carefully examined the authorities under which foreign judgments may be enforced therein, and concluded:

"In view of all the authorities upon the subject, and of the trend of judicial opinion in this country and in England, following the lead of Kent and Story, we are satisfied that, where there has been an opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court or in the system of laws under which it is sitting, or fraud in procuring the judgment, or any special reason why the comity of this nation should not allow its full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the part that the judgment was erroneous in law or in fact. The defendants, therefore, cannot be permitted upon that general ground to contest the validity or the effect of the judgment sued on." Hilton v. Guyot, 159 U. S. 202, 16 Sup. Ct. 158 (40 L. Ed. 95).

"When an action is brought in a court of this country, by a citizen of a foreign country against one of our own citizens, to recover a sum of money adjudged by a court of that country to be due from the defendant to the plaintiff, and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs and opportunity to defend against them, and its proceedings are accord-

ing to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is prima facie evidence, at least, of the truth of the matter adjudged, and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that, by the principles of international law and by the comity of our own country, it should not be given full credit and effect." Hilton v. Guyot, 159 U. S. 205, 16 Sup. Ct. 159 (40 L. Ed. 95).

In the case of Hilton v. Guyot, however, the court refused to hold the French judgment sued on to be conclusive, but held it "prima facie evidence only of the justice of the plaintiff's claim," for want of reciprocal recognition of the higher rules of comity in the French courts, in which American judgments are given only prima facie value as evidence.

The case of Ritchie v. McMullen, 159 U. S. 235, 16 Sup. Ct. 171, 40 L. Ed. 133, was under consideration at the same time, and was decided with that of Hilton v. Guyot. This was a suit to enforce a Canadian judgement, and the court in the two cases points out the difference in the rule which prevails in the courts of the United States between French and English judgments. In the last case the court said:

"By the law of England, prevailing in Canada, a judgment rendered by an American court under like circumstances would be allowed full and conclusive effect. Scott v. Pilkington, 2 B. & S. 11; Abouloff v. Oppenheimer, 10 Q. B. D. 295, 307; Vadala v. Lowes, 25 Q. B. D. 310; Nouvion v. Freeman, 15 App. Cas. 1, 10; Fowler v. Vail, 27 Upper Canada, C. P. 417, and 4 Ontario App. Cas. 267."

And the court concludes that:

"Upon principle, therefore, as well as upon authority, comity requires that the judgment sued on should be held conclusive of the matter adjudged." Ritchie v. McMullen, 159 U. S. 242, 243, 16 Sup. Ct. 174 (40 L. Ed. 133).

The character and value of English judgments in the courts of the United States was finally determined by these cases.

They had long been held to be prima facie evidence only, but now they were given an equal effect with domestic judgments, and held to be conclusive of the matters adjudged, subject only to direct attack for want of jurisdiction, fraud, or mistake. And such was the previous rule in New York, Maine, and Illinois (Lazier v. Westcott, 26 N. Y. 146, 150, 82 Am. Dec. 404; Dunstan v. Higgins, 138 N. Y. 70, 74, 33 N. E. 729, 20 L. R. A. 668, 34 Am. St. Rep. 431; Rankin v. Goddard, 54 Me. 28, 89 Am. Dec. 718; Id., 55 Me. 389; Baker v. Palmer, 83 Ill. 568) ; and such is the trend of modern decisions both in the United States and England.

Black on Judgments states the final rule as follows:

"Notwithstanding the fluctuations of opinions manifested in the earlier cases which we have cited, the English courts have finally determined upon the conclusiveness of foreign judgments in personam, and it must now be regarded as irrevocably settled as a rule of English law that such judgments, when rendered by a court having jurisdiction of the subject-matter and the parties, and without fraud, and while still remaining in full force abroad, are binding and conclusive in the English courts, in all cases, and not open to impeachment or re-examination on the merits." Black on Judgments (2d Ed.) vol. 2, § 827.

And upon the final rule in American courts this same author concludes:

"From this review of the decisions it will have become apparent that, notwithstanding an occasional adverse dictum, and perhaps one or two positive rulings, the general tendency of the more recent American cases· has been steadily and uniformly towards the position finally reached by the English courts." Black on Judgments (2d Ed.) vol. 2, § 829.

Upon the principles announced by the majority of the judges, as well as upon those contended for by the minority, in the cases of Hilton v. Guyot and Ritchie v. McMullen, supra, and upon the now settled doctrine in both the United States and England, a Canadian judgment will be given full faith and credit as a cause of action, and treated as conclusive evidence

of the matters adjudged therein, when sued upon in the courts of this territory; subject, of course, to a defense for the want of jurisdiction, mistake, or fraud.

It appears from the pleadings in this court that plaintiff and defendant were both domiciled in and residents of the Yukon Territory and engaged in business there at the time the liability on the account and note declared on in the Canadian judgment was contracted, and that personal service of the summons and claim sued on in that case was made there on the defendant. It will not be contended that these original causes of action were not merged in the Canadian judgment, if the question were raised in the Canadian courts. The plaintiff could not relitigate its original causes of action in the courts of the Yukon Territory for that reason. Why permit it here? What rule of "the comity of nations" authorizes the resurrection of the dead issues of that case and their trial anew in this court? If the foreign judgment is conclusive upon the merits against the defendant, why is it not equally so against the plaintiff? Is it conclusive if it may be reopened and relitigated at the suit of either party?

Under the recent American and English decisions, the judgments of either nation are held to be of a higher nature in the courts of the other than the original cause of action. The old rule was that such a judgment was prima facie evidence, only, of the adjudication, but now it is conclusive upon the merits. The logical result of the new rule is that an inquiry into the merits is barred to both plaintiff and defendant; else nothing is gained by the new rule of conclusiveness. Under the old rule, the courts held that the original causes of action were not merged in the judgment, because it was of no higher nature as evidence than they; but the rule in both the American and English courts now seems to be the other way.

Herman, in his work on Estoppel and Res Judicata, lays down the rule that:

"Whenever a court has jurisdiction of the subject-matter and of the parties, it is a settled rule of law that it may proceed to adjudge the matters in controversy between the parties, and render a judgment, which, until reversed by an appellate court, is conclusive upon the parties and their privies. There is also another rule of law that is unquestioned—that a judgment merges the cause of action, and that no action can thereafter be brought upon the same cause, but it must be upon the judgment. Under these rules, there can be no reason why a judgment between the parties by a court of competent jurisdiction, rendered in a foreign country, should not have the same force and effect. There is every reason why such a judgment should be received as conclusive evidence. It therefore may be stated that the rule upon principle is that a foreign judgment, if the court had jurisdiction of the subject-matter, and the parties were regularly brought before it, is conclusive, and merges the original cause of action." Herman on Estoppel and Res Judicata, vol. 1, § 498, citing both the American and English authorities.

It must be admitted that the decisions seem to be as far from uniformity on the question of the merger of the original cause as they formerly were on the force and effect of the judgment itself. The old decisions, holding that the judgment is only prima facie evidence and of no higher character than the original cause of action, also hold that there is no merger; and counsel for plaintiff have cited these to the court in support of their contention, and also insist that Hilton v. Guyot is to the same effect. Beginning on page 199 of 159 U. S., page 157 of 16 Sup. Ct. (40 L. Ed. 95), the Supreme Court restated the old rule, but without adopting it, and the statement that the foreign judgment did not merge the cause of action was merely quoted, not adopted, in that case.

The Constitution of the United States provides that:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may by general law prescribe the manner in which such acts, records, and proceedings shall be proved and the effect thereof." Article 4, § 1.

Congress seems to have attempted to give form to the rule of "the comity of nations" as defined by the Supreme Court

of the United States in Hilton v. Guyot, supra, when, in response to this constitutional requirement, it passed the act of 1790, prescribing how such records should be proved, as follows:

"And the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken." Act May 26, 1790, c. 11, 1 Stat. 122; Rev. St. § 905, U. S. Comp. St. 1901, p. 677.

The construction of this constitutional and statutory rule, declaring the effect of the judgment of one state in the courts of another, gave rise to doubts in the minds of the judges very similar to those which have so long prevailed in relation to foreign judgments. The early decisions held that such state judgments were only prima facie evidence of the matters adjudged. Black on Judgments (2d Ed.) vol. 2, § 855. But in 1813 the Supreme Court of the United States, in the case of Mills v. Duryee, laid down the true rule. The court said in that case:

"Were the construction contended for by the plaintiff in error to prevail, that judgments of the state courts ought to be considered prima facie evidence only, this clause in the Constitution would be utterly unimportant and illusory. The common law would give such judgments precisely the same effect. It is manifest, however, that the Constitution contemplated a power in Congress to give a conclusive effect to such judgments, and we can perceive no rational interpretation of the act of Congress, unless it declare a judgment conclusive when a court of a particular state where it is rendered would pronounce the same decision." Mills v. Duryee, 7 Cranch (U. S.) 481, 3 L. Ed. 411.

And Black on Judgments concludes on this question by saying:

"The leading case is authority for the proposition that a judgment of a sister state is conclusive on the merits; that, for purposes of pleading and evidence, it is entitled to the full dignity of a record; and that defendant is not at liberty, when sued on the judgment, to deny the indebtedness which it ascertains and establishes, or to im-

peach its justice or deny its obligations. But beyond that the decision does not go. Jurisdictional inquiries are still permissible. It is now held by all the state courts, following the lead of the federal decisions, that a judgment rendered by a court of competent authority, having jurisdiction of the parties and subject-matter, in one state, is conclusive on the merits in the courts of every other state, when made the basis of an action, and in such action the merits cannot be inquired into." Black on Judgments (2d Ed.) vol. 2, §§ 856, 857.

And that is exactly what I understand the Supreme Court of the United States to have decided, in relation to the value and effect of Canadian judgments in the courts of the United States, in the cases of Hilton v. Guyot and Ritchie v. McMullen, supra. The logical conclusion of that rule is that the original cause of action is merged in the judgment.

Black lays down this rule in relation to merger in judgments rendered in the states of this Union:

"As between the several states of the American Union [contrary to the rule in regard to judgments from foreign countries], it is well settled that the recovery of a judgment in one state, in a court having jurisdiction, merges the original cause of action, so that it cannot hereafter form the basis of a fresh suit in another state." Black on Judgments, supra, § 864.

Black and Herman squarely disagree on the rule in relation to the merger of the cause of action in the foreign judgment, and neither is right without noting the exception made in the principal cases. There are two rules, not one. Canadian judgments are conclusive under one rule, and French judgments are only prima facie evidence under the other. The cause of action is merged in the Canadian judgment; it is not merged in the French judgment.

It is my opinion, then, that the original cause of action cannot be joined in a suit in this court to enforce a valid Canadian judgment as a separate cause of action; that such original cause of action is merged in the Canadian judgment; that such judgment is conclusive upon the merits, but subject to di-

rect attack for jurisdictional defects, mistake, or fraud. For these reasons, the proposed amendment is denied.

## On the Merits.

This case was tried by the court without a jury. But one question was raised on the merits, viz., did the Yukon court have jurisdiction to enter the judgment sued on in this action?

Plaintiff offered in evidence an exemplification of the record from the Territorial Court of the Yukon Territory, Canada, containing the judgment roll, including a copy of the claim sued on, the summons, proof of service of the summons, and the judgment; offered a witness to prove that the judgment remained unpaid; offered the Canadian statutes providing the manner of service of the writ of summons on a resident agent; and then rested. The defendant then testified that, prior to the service on his alleged agent, he had sold all his property in that territory, and had removed into the territories of the United States, and at the time of the service, proceedings, and judgment, was not within Canadian territory, had no property and was not carrying on business there.

The Canadian statute providing the manner of the service of summons on a resident agent is as follows:

"(13) Service of a writ of summons may be made by the sheriff, his deputy or bailiff or by any other literate person other than a plaintiff but except by order of a judge no fees for service shall in such latter case be allowed.

"(14) Service of writ of summons shall be effected by copy as follows:

"(1) By personal service anywhere in the Territories;

"(2) In case any defendant is out of the Territories but has an agent, managing clerk or other representative resident and carrying on his business within the same service of the writ of summons may be made on such agent, managing clerk or other representative. * * *"

Consolidated Ordinances of the Northwest Territories of Canada, 1898, p. 198.

The judgment roll offered in evidence discloses that the statement of claim sued upon was amended after a first service, and a second service of the summons and statement was made. The affidavits of service, leaving out the merely formal parts, read as follows:

"I, Jean Chas. Brazier, N. W. M. P., of the Yukon Territory, make oath and say: (1) That I did on Tuesday, the 21st day of October, 1902, serve Charles G. Debney, through William A. Debney, through his attorney in fact, the above-named defendant, with true copies of the writ of summons and statement of claim, herein, hereunto annexed and marked, respectively, Exhibits 'A' and 'B,' to this my affidavit by delivering the said copies to and leaving the same with the defendant at Last Chance Creek, being fifteen miles distant from the courthouse at Dawson. (2) That to effect such service I necessarily traveled eighteen miles."

And:

"I, J. C. Brazier, of N. W. M. Police, Hunker Creek, in the Yukon Territory, make oath and say: (1) That I did on Tuesday, the 11th day of November, 1902, personally serve Charles G. Debney, the above-named defendant, with true copies of the writ of summons and amended statement of claim, herein, hereunto annexed and marked, respectively, Exhibits 'A' and 'B' to this my affidavit, by delivering the said copies to and leaving the same with A. W. Debney, the duly authorized agent and attorney in fact of the defendant at Last Chance Creek, being fifteen miles distant from the courthouse at Dawson. (2) That to effect such service I necessarily traveled 18 miles."

That part of the summons addressed to the defendant, and intended to give him notice of the time and place of trial, reads as follows:

"You are notified that the plaintiff has entered an action against you in the above-named court for the recovery of the claim or demand, a statement of which is filed in court and annexed to this summons. And you are commanded that if you dispute the said claim, either in whole or part, you do, within eight days from the service of this writ on you, exclusive of the day of such service, cause to be entered for you, in the office of the clerk of this court, an appearance, and within six days thereafter file with the clerk a statement of the grounds on which such dispute is based. And take notice that in default of your so doing, the plaintiff may proceed in

his said action, and judgment may be given in your absence, and without further notice to you."

No appearance was made by or for the defendant in the action, and the following judgment, being the judgment sued on in this court, was entered on November 25, 1902, omitting the merely formal parts:

"The defendant not having appeared to the writ of summons herein, it is this day adjudged that the plaintiff recover against the defendant $6,270 $^{90}/_{100}$ and costs to be taxed. Dated this twenty-fifth day of November, 1902.

    "[Seal]                   [Sgd.]  Charles Macdonald,
    "T. C. Y. T.                         Clerk of the Court.

"The plaintiff's costs in the above action on default of appearance have this day been taxed and allowed at $248 $^{60}/_{100}$. Dated this 25th day of Nov., 1902.

    "[Seal]                   [Sgd.]  Charles Macdonald,
                                   "Clerk of the Court."

The jurisdiction of the Yukon Territory court to enter the judgment sued on is denied by the defendant's answer, wherein he specially pleads that he was not in Canadian territory at the time either of the services of summons was made, nor for a long time prior thereto, nor at any time subsequent; that he had no property or business of any kind there at any of said times; that no personal service of summons or other process in that suit was made on him, nor was any such service made by publication; that no appearance was made in that suit by or for him; and that no service of summons or other process was made on any agent or other person resident in said Yukon Territory and carrying on business therein for him.

In Hilton v. Guyot and Ritchie v. McMullen, supra, Canadian judgments in personam are declared to be conclusive upon the merits of the case, subject only to direct attack, among other causes, for want of jurisdiction. Such an attack is made by the defendant upon the judgment in this case, for want of service of summons or other notice to the defendant prior to its entry.

Counsel for plaintiff call attention to the rule that every presumption is to be indulged in favor of the regularity of the proceedings of a court upon which its solemn judgment is based, and rely upon it to cure all alleged defects in the process or proceedings in this case prior to the entry of the foreign judgment sued on; but there is a well-established exception to that rule, which is binding upon this court, and which is clearly stated by the Supreme Court of the United States in Settlemier v. Sullivan, 97 U. S. 444, 24 L. Ed. 1110, in the following language:

"We do not question the doctrine that a court of general jurisdiction, acting within the scope of its authority—that is, within the boundaries which the law assigns to it with respect to subjects and persons—is presumed to act rightly and to have jurisdiction to render the judgment it pronounces until the contrary appears. But this presumption can only arise with respect to jurisdictional facts, concerning which the record is silent. It cannot be indulged when the evidence respecting the facts is stated, or averments respecting them are made. If the record is silent with respect to any which must have been established before the court could have rightly acted, it will be presumed that such fact was properly brought to its knowledge. But if the record give the evidence or make an averment with respect to a jurisdictional fact, it will be taken to speak the truth, and the whole truth, in that regard, and no presumption will be allowed that other and different evidence was produced, or that the fact was otherwise than as averred. 'If, for example,' to give an illustration from the case of Galpin v. Page, 18 Wall. 366, 21 L. Ed. 959, 'it appears from the return of the officer or the proof of service contained in the record that the summons was served at a particular place, and there is no averment of any other service, it will not be presumed that service was also made at another and different place; or, if it appear in like manner that the service was made upon a person other than the defendant, it will not be presumed, in the silence of the record, that it was made upon the defendant also.'"

The judgment roll offered in evidence contains a copy of the original and amended statements of claim sued upon and the summons directed to the defendant; copies of the affidavits of service of the summons and statements, which show when, where, and how, by whom, and upon whom, the summons

and statements were served, and in what capacity the alleged agent of defendant was served; the affidavit of the solicitor for the plaintiff, showing the nonappearance of the defendant, or of any one on his behalf; and also the default judgment, showing its character, and also that it was made and entered by the clerk of the court only. Appended to this record is the certificate of the clerk, under the seal of the court, wherein he certifies that the attached record constitutes "a true copy and record of all the pleadings and proceedings had and taken in the action aforesaid." Under the rule stated in Settlemier v. Sullivan, there is in this case no presumption in favor of the record. Plaintiff's case must stand or fall by the evidence shown upon the judgment roll, added to that taken in this court.

Plaintiff also contends that the defendant is barred by the principles of estoppel to deny that A. W. Debney was such an agent as might be served with summons for him in a suit in personam in the Yukon Territory. It is a conceded fact in this case that on September 12, 1900, the defendant made, signed, and delivered to his brother, A. W. Debney, at Dawson, Yukon Territory, a power of attorney in the following words:

"Dominion Creek, Sept. 12, 1900.

"Know all men by these presents, that I, C. G. Debney, of Dawson, Y. T., do hereby appoint my brother, Alfred W. Debney, also of Dawson, Y. T., my true and lawful attorney, for me and in my place, to transact any and all business relating to my interests in the Yukon Territory, and I hereby ratify any and all acts he may perform.

"Witness:                                    C. G. Debney."

"Ed. Champlin."

It is not shown by any recital in the judgment roll, or any other evidence, that any part or portion of the original cause of action was incurred by the agent under the power of attorney. The evidence discloses that the power was given by the defendant at or about the time of his departure from Canadian territory, and in anticipation thereof, and, as the evidence in

this court shows, subsequent to the incurring of the obligations sued on. It is not shown that the plaintiff acted or relied upon it in any otherwise than in making the service in the Yukon suit. Plaintiff was not misled thereby, except, if at all, in the opinion of its attorney that the power was such as constituted the agent named by it one which the statute declared might be served, instead of his absent principal. I cannot discover any element of estoppel in this power of attorney or the subsequent actions of the agent. If he was such an agent as the Yukon law declares may be served with summons for his nonresident principal, it is the statute, and not the estoppel, which binds the defendant.

The real question in this case is one of fact. Was the defendant, after he left Dawson and returned to Alaska, represented in the Yukon Territory by Alfred W. Debney as "an agent, managing clerk, or other representative resident, and carrying on his business"? If Alfred W. Debney was such an agent when the summons and claims were so served on him in the fall of 1902, the Yukon court had jurisdiction; otherwise not.

Recitals of service contained in the record may, in some instances, be considered in aid of the verdict. The first one in this case is contained in the præcipe signed by the plaintiff's Yukon solicitor, directing the clerk to "issue a writ of summons in this case. Defendant is absent from the territory, but his agent resides therein." If this stood alone, there might be more doubt, although it does not disclose who the agent is, nor what his powers are. The first affidavit of service of summons and statement of claim made by Brazier, policeman, in October, 1902, is insufficient to show service upon either defendant or his agent; its recitals are meaningless. The proof of the second service in November, 1902, is more specific, and shows service upon "A. W. Debney, the duly authorized agent

2 A.R.—21

and attorney in fact of the defendant." This is the sum of the recitals contained in the Yukon record on service and agency. The record does not contain any finding of fact by the Yukon court upon either matter. No evidence was offered or considered there upon the character of the service or of the agency, nor does the default judgment signed by the clerk of the court contain any recital or mention of either. Upon the whole, the præcipe and affidavits of service contain averments that A. W. Debney was only the agent and attorney in fact of the absent defendant. Under the rule in Settlemier v. Sullivan, supra, nothing will be presumed in aid of the fact. It was not only necessary that he should be an agent, but equally so that he should be at the time of service "carrying on his [defendant's] business within the" territory. The record in the Yukon court conclusively excludes the presumption that this latter fact was considered or found by that court.

Order 3 of the Yukon statutes, offered in evidence in this court, provides for personal service of summons upon defendants resident within the territory. Order 4 provides for personal service upon defendants out of the territories. Order 3, § 14, provides that service of writ of summons shall be effected by copy "(2) in case any defendant is out of the territories but has an agent, managing clerk or other representative, resident and carrying on his business within the same service of the writ of summons may be made on such agent, managing clerk or other representative." It is conceded by the plaintiff that the service made was attempted to be made in compliance with this section. Since the Yukon record does not show such a service, and necessarily excludes the presumption that the statutory service was made, it is necessary to look to the evidence taken in this court to determine both the character of the agency and the service made in that jurisdiction.

The power of attorney given by defendant to his brother, A. W. Debney, on September 12, 1900, appointed him "my true

and lawful attorney," and authorized him generally "to trans-
act any and all business relating to my interests in the Yukon
Territory," and was not revoked of record at the time of the
service on such agent in the fall of 1902. It is fairly establish-
ed by the evidence in this case that A. W. Debney was the
attorney in fact under this power when served with the sum-
mons and claims in the Yukon case. The statute, however, re-
quires additional jurisdictional qualifications before the service
is good. The agency may be, or not, created by writing, but
it must be accompanied with the added qualification that the
agent, managing clerk, or other such representative be resident
in that territory at the time of service, and the agent in this
case was so resident. But the statute further adds, "and
carrying on his business within the same." It is the apparent
intention of the statute to make such service binding on the
nonresident defendant only when made on one in charge of
and carrying on his business—one in charge of his property,
and representing the owner in his business. This is as necessary
a fact in acquiring jurisdiction as the service itself; it is not
every agent upon whom such service may be made. One who
is armed in aid of his own business with a power of attorney
from a nonresident defendant is not such an agent as the stat-
ute names. The power of attorney in question in this case does
not, upon its face, make the attorney in fact mentioned therein
such an agent as the statute contemplates.

The only testimony in this case touching the business of
the defendant in the Yukon Territory at the time this service
was made was given by defendant himself. His testimony was
that about September, 1900, he sold all his mining property
and all other interests in Yukon Territory near Dawson, and
returned to Alaska, where he has ever since resided, and that
since said date he has had no business or property of any kind
in Yukon Territory. Plaintiff offered no evidence in denial
of defendant's statement, but on cross-examination offered

some letters written in 1902, about the time the suit was brought in the Yukon courts, signed by A. W. Debney as the attorney in fact for defendant, to show that the agent was so acting for him. The evidence disclosed that a half interest in a valuable mining claim had remained in the name of an agent of plaintiff when defendant left Dawson; that defendant had sold that with all other claims to A. W. Debney; that plaintiff had refused to transfer it to A. W. Debney until a bill which they held against defendant for interest was paid; and that to secure himself A. W. Debney paid that amount, and was credited by defendant for so doing. This is the only act of business which the evidence shows the agent to have done, except to demand the transfer of the half interest from plaintiff to himself, and falls far short of proving that the agent was carrying on defendant's business. It only proves that A. W. Debney was attending to his own business—that he procured possession of the half interest in the mine for himself, and not for the defendant. It must not be forgotten, either, that while the letters are admitted on cross-examination to have been in the handwriting of A. W. Debney, they do not prove the facts stated in them, and these facts are explained or denied by defendant in line with his general evidence. Clearly, the preponderance of the evidence is with the defendant, and sustains his claim that A. W. Debney was not, at the time of the service or at any subsequent period, his "agent, managing clerk, or other representative, resident and carrying on his business within" Yukon Territory. He was armed with a power of attorney from defendant for the purpose of aiding him to reduce to his own possession property purchased by him from the defendant.

It is my judgment that the service was void, and gave the Yukon court no jurisdiction, because it was not made in compliance with section 14, order 3, upon an agent carrying on defendant's business. The Yukon court had no jurisdiction

to render a judgment in personam against the defendant upon that service. The judgment is void for that reason, and cannot form the basis of a new judgment in this court. In my opinion, also, the service is bad and the judgment void for other jurisdictional defects, which are not argued, and which are, therefore, not noticed.

This court might feel bound to follow the decisions of the courts of Yukon Territory or of the appellate courts of Canada, construing this or similar statutes of Canada, but none have been called to its attention. Hilton v. Guyot, supra; Elmendorf v. Taylor, 10 Wheat. (U. S.) 152, 159, 160, 6 L. Ed. 289.

This action will be dismissed for want of jurisdiction.