## NORTHERN ALUMINUM COMPANY, LTD., *v.* FRANK LAW.

[No. 9, October Term, 1929.]

642

*Decided November 14th, 1929.*

The cause was argued before BOND, C. J., URNER, AD-KINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*John H. Hessey,* with whom were *G. W. S. Musgrave* and *A. S. Musgrave* on the brief, for the appellant.

*F. Fulton Bramble,* with whom were *Barton, Wilmer, Ambler & Barton* and *James J. McGrath* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

The appellant sued the appellee in the Court of Common Pleas of Baltimore City on a judgment obtained in the

Province of Ontario, Canada.

The declaration alleged that the defendant, at the time of the institution of the suit in Ontario, was domiciled and ordinarily resident in the Province of Ontario and within the jurisdiction of the Supreme Court of Ontario, that the said defendant, having temporarily absented himself from the jurisdiction of the said Supreme Court of Ontario to reside temporarily in the City of Baltimore, in the State of Maryland, there was issued by the Supreme Court of Ontario an order for the issuance of a concurrent writ of summons for service out of the jurisdiction of said court upon the said defendant; that the jurisdiction of said court to make said order is granted by rules of said court, passed pursuant to the provisions of the Ontario Judicature Act, Rule 25, providing that service out of Ontario of a writ of summons or notice of writ may be allowed whenever, among other things, (c) any relief is sought against any person domiciled or ordinarily resident within Ontario; that the application for such writ was accompanied by the affidavit required by the rules of said court; that the said defendant was duly served with said writ of summons at the City of Baltimore in the State of Maryland, and, not having disputed his liability, judgment was entered against him by said court on the 27th day of March, 1924, in the sum of $1,216.32; that the Supreme Court of the Province of Ontario is a court of record. An exemplified copy of the proceedings and of the judgment was filed with the declaration.

Defendant demurred to the declaration because: 1. The said declaration was bad in substance and insufficient in law. 2. The Ontario Court had no jurisdiction over the person of the defendant, the declaration disclosing that the defendant, at the time of the institution of the suit, and at the time of the service of process upon him, was a resident of the City of Baltimore, and that said process was served upon him only in said city and not within the territorial jurisdiction of the Province of Ontario. This appeal is from a judgment following an order sustaining the demurrer.

The effect of the ruling appealed from was to hold that, even if the defendant was a citizen of Ontario and a British subject, and ordinarily residing in Ontario, and was only temporarily residing in the City of Baltimore, the Ontario court had no jurisdiction to summon him outside of its territorial limits in the manner provided by its laws.

We think the learned trial court was in error in so holding, and that the weight of authority is against that ruling, although it has some support, as for instance in *Smith v. Grady,* 68 Wis. 215. Most of the authorities cited by appellee in support of his contention are cases where the defendants were not citizens of the foreign country or state, and in some of them the citizenship of defendants does not appear, as in *Bischoff v. Wethered,* 9 Wall. (76 U. S.), 714.

In *Pennoyer v. Neff,* 95 U. S. 714, a case much relied on by appellee, the court said: "Process sent to him (a defendant) out of the state, and process published within it are equally unavailing to establish his personal liability." In that case, however, the defendant was not a citizen of the state where the original judgment was obtained. And although there is language used in that case which has been interpreted by some courts as extending the principle to citizens who are merely absent (such as *Raher v. Raher,* 150 Iowa, 511), in most cases where it has been approved and followed, the defendants have been nonresidents, and not citizens of the country or state where the original judgment was obtained; and special note is taken of the fact that the defendants are nonresidents.

In *Freeman on Judgments* (5th Ed.), sec. 1376, it is said in substance that the position which seems to be best sustained both by reason and by precedents is that each state has the authority to provide the means by which its own citizens may be brought before its courts, and that judgments obtained on such process are not open to question on that ground in other states. This principle is recognized, impliedly at least, in the following cases: *Harryman v. Roberts,* 52 Md. 64; *McEwan v. Zimmer,* 38 Mich. 765;

*Shepard v. Wright,* 113 N. Y. 582; *Kerr v. Tagliavia,* 168 N. Y. Supp. 697; *Keenan v. Keenan,* 40 Nevada, 351; *Ward v. Connecticut Pipe Mfg. Co.,* 71 Conn. 345; *Cross v. Armstrong,* 44 Ohio St. 627; *Green v. Sarmiento,* 1 Peters C. C. 74, Fed. Cas. No. 5,760; *Goldey v. Morning News,* 156 U. S. 518; *Hall v. Lanning,* 91 U. S. 160; *Ritchie v. McMullen,* 159 U. S. 235; *Dull v. Blackman,* 169 U. S. 243; *New York Life Ins. Co. v. Dunlevy,* 241 U. S. 518; *McDonald v. Mabee,* 243 U. S. 90.

In *Harryman v. Roberts, supra,* the judgment in question was obtained in Ohio against a citizen of Ohio, so the question of nonresidence did not arise. The objection was to the method of service of process in that state. There was no personal service, but a written notice was left at defendant's place of residence in accordance with the law of that state. In the opinion delivered by Judge Robinson it was said: "It is essential, of course, to the validity of every judgment, that the parties to be bound should have notice of some kind, either actual or constructive. Everyone is entitled to his day in court, and to the right of being heard before a judgment of any kind is reached against him. But it is not always necessary that personal process shall be served upon him. Each state has the right to prescribe by law how its citizens shall be brought into its courts. And whatever conflict there may be in some of the earlier cases on the subject, we think it is now well settled, that if process be served upon the defendant, according to the laws of the state of which he is a *resident,* and judgment be afterwards rendered against him, such a judgment is as binding between the parties in this state, when relied on as a bar to the prosecution of a second suit, upon the same cause of action, as it is in the state where it was rendered."

And Mr. Freeman says (section 1376) that it is not "destructive of the extraterritorial effect of a judgment based on constructive service that the defendant, being a citizen of the state, was temporarily absent therefrom. It is sufficient that he was, at the time, subject to the laws of the state

and to the territorial authority of the court." See also *Henderson v. Stanford*, 105 Mass. 504; *Gillespie v. Commercial Ins. Co.*, 12 Gray (Mass.), 201; *Orcutt v. Ranney*, 10 Cush. (Mass.) 183; *Morrison v. Underwood*, 5 Cush. (Mass.) 52; *L. R. A.* 1917C, 1143; 35 *L. R. A.* (N. S.), 292; 50 *L. R. A.* 585; 21 *R. C. L.* 1292; *American Law Institute, Conflict of Laws*, Restatement No. 2, pages 60 and 63.

As to judgments of courts of foreign countries, there is no constitutional requirement of recognition. It is a matter of comity. In *Hilton v. Guyot*, 159 U. S. 113, there is an exhaustive review of authorities, English and American, in the opinion of the court delivered by Mr. Justice Gray. It is there stated that "the rule of reciprocity has worked itself firmly into the structure of international jurisprudence," and the decision in that case was based on that principle. That is, we give full faith and credit to judgments of courts of foreign countries, when a like recognition is given by the courts of such countries to the judgments of our courts. As a condition to such recognition, however, it must appear that "there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect."

*Ritchie v. McMullen*, 159 U. S. 235, was a suit on a Canadian judgment. The answer alleged want of jurisdiction in the Canadian court; a demurrer to the answer was sustained on the ground that there was nothing in the answer to show that the Canadian court had not jurisdiction of the person of the defendant. The court said: "By the law of England, prevailing in Canada, a judgment rendered by an

American court under like circumstances would be allowed full and conclusive effect."

We are now dealing only with the allegations of the declaration. The demurrer admits them to be true. One of them is that defendant was domiciled and ordinarily resident in the Province of Ontario at the time of the institution of the suit in Ontario.

As the case will be remanded, the appellee will have the opportunity to plead, and to deny such jurisdictional allegations as he is in a position to controvert.

Apart from the main objection raised by appellee, which we have considered, he also objects that the rule of the court of Ontario as to extraterritorial service is not limited to subjects of Great Britain and residents of Ontario. That, however, would not prevent the rule from having effect in so far as it applied to such citizens.

Another objection raised is that the provisions of the statute authorizing service are not set out in the declaration. That, however, is a matter of proof. This applies also to other objections of a similar nature.

Finally, it is urged that the record shows that at the time suit was instituted in Ontario no cause of action existed. This objection is based on an allegation in the declaration that the suit in Ontario was filed on or about July 5th, 1923, and a statement in the affidavit accompanying the application in the court of Ontario for the concurrent writ of process that "the sum of $1,216.32 is due and owing under a contract whereby the defendants jointly and severally promised to guarantee payment of the plaintiff's judgment against the Plummer Machine Company, Limited, dated September 17, 1923, for $1,647.59, and costs." This question is not open to inquiry here, assuming the court in Ontario had jurisdiction of the person of the defendant.

> *Judgment reversed and cause remanded for further proceedings, with costs to appellant.*