GREENE v. BENTLEY et al.

(Circuit Court of Appeals, Fifth Circuit. February 18, 1902.)

No. 1,068

CHATTEL MORTGAGES—REMOVAL OF PROPERTY BY MORTGAGOR—LACHES OF MORTGAGEE.

A mortgagee in a chattel mortgage taken under the laws of Texas, which require him, in case the property shall be removed into another county, to record his mortgage in such county within four months, under the penalty of rendering the mortgage void as against creditors of the mortgagor or purchasers without notice, is bound to exercise reasonable diligence to give notice of and protect his lien in case the property is removed into another state; and where a mortgagee had knowledge that property included in his mortgage had been taken by the mortgagor into an adjoining county in Louisiana, but permitted it to remain there three years without taking any steps to assert his claim or give notice of it, although it was long past due, he will be barred by laches from enforcing his lien after the property has been surreptitiously brought back into Texas by the mortgagor, as against one who purchased it for value and without notice under an execution sale in Louisiana; and this although he could not have recorded or enforced his mortgage under the laws of Louisiana, where he had ample time to have reduced his claim to judgment and sold the property on execution.

Appeal from the Circuit Court of the United States for the Eastern District of Texas.

F. H. Prendergast, for appellant.

Chas. S. Todd, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. On November 9, 1895, one L. C. Smith executed a chattel mortgage to W. S. Johnson, on 15 mules and other personal property, to secure said Johnson for his indorsement of the note of said Smith to the First National Bank of Atlanta, Tex., for

$875, and "also to secure the payment of an open account due E. M. Greene [appellant] amounting to $1,340, which stands charged to Smith & Johnson." The mortgage was executed and duly recorded in Cass county, Tex., and all the parties to it reside there; but it did not recite where the property was situated at the time, and it does not clearly appear from the evidence. At that time Smith was at work with the mules on the Kansas City, Pittsburg & Gulf Railroad, and hauling from Atlanta to said railroad. The railroad runs through Cass county, Tex., a short distance (about 10 miles), then crosses the state line, and continues southward through Caddo parish, in the state of Louisiana, for about 200 miles. Soon after the execution of the mortgage, Smith carried 10 of the mortgaged mules to Louisiana, and they were in Louisiana nearly all the time from the fall of 1895 until September, 1898. On June 21, 1897, Smith executed his note to I. L. Safferstone, at Shreveport, La., for $334.44, on which Safferstone brought suit in the First judicial district court of Caddo parish, La., on the 20th day of December, 1897. On February 7, 1898, I. L. Safferstone recovered judgment against Smith in said suit on said note. On February 24, 1898, a writ of fieri facias was issued on said judgment, and on February 28th it was levied on 10 of the mules in controversy, and they were duly advertised to be sold on April 2, 1898. On that day they were sold under said writ to Hunter Bros., of Shreveport, for $350. The 10 mules were immediately delivered to Hunter Bros., who permitted them to remain in Smith's apparent possession until September 20, 1898, when they sold them, with 4 others which they had bought from Manning or Prater, for $700, to appellees, W. J. Bentley & Co., for $1,200, taking three notes, at 30, 60, and 90 days, for $400 each, which notes were paid in due course by appellees. At the time Bentley & Co. purchased the mules they had no notice, actual or constructive, of any claim of appellant, Greene, and they bought in good faith, for value. Hunter Bros. delivered the mules to Bentley & Co., and they, being engaged in United States government levee work on Red river, put them on their work, and, at Smith's request, employed him to work them, which he did for their account until December 4, 1898. There is much evidence tending to show that the sale under execution on the Safferstone judgment, the purchase by Hunter Bros., and the subsequent sale by Hunter Bros. to W. J. Bentley & Co. were simulations, whereby Smith actually retained his ownership of the mules in question, as he certainly did the possession; but, on the whole case, we follow the trial judge in holding to the contrary. December 4, 1898, without the knowledge or consent of Bentley & Co., Smith took the mules off the work in Louisiana, and carried them to Atlanta, Cass county, Texas, and turned them over to appellant, Greene, to satisfy the mortgage debt Smith owed to Greene. Hedberg, of the firm of Bentley & Co., immediately followed, and found the mules in Greene's possession, and demanded them of him, but Greene refused to give them up; claiming them under his mortgage, and a sale by Smith to satisfy same. Bentley & Co. instituted a suit at law against Greene in the United States circuit court for the Eastern district of Texas to recover the mules, or their value, and for damages. Greene, defendant in that suit, pleaded

114 F.—8

to the jurisdiction of the court, but the plea was overruled on hearing of testimony. Greene then filed this bill to stay the action at law, and for foreclosure of the mortgage. No injunction was granted, but, on full hearing of the evidence, the court rendered a decree in favor of the appellees, Bentley & Co., for title and possession of the mules, and also for $70 as damages, from which decree Greene has sued out and perfected this appeal.

The appellant contends in his first assignment of error that a valid lien in his favor having been fixed on the mules in Cass county, Tex., the lien could not be devested or destroyed by Smith's removing the mules into Louisiana. As against Smith, this proposition is probably correct; but as against Bentley & Co., who acquired the mules in Louisiana in good faith and without notice, and under the circumstances shown by the evidence, it is not necessarily correct. Chattel mortgages are unknown to the laws of Louisiana, and cannot be enforced in that state. Delop v. Windsor, 26 La. Ann. 185. It would seem, therefore, that when the mules in controversy were moved into Louisiana, with or without the consent of the appellant, they became subject to the laws of that state, and the lien of the Texas mortgage lapsed, or at least remained in abeyance, as long as the mules remained in Louisiana. It follows that the mules in Louisiana were subjected to seizure and sale under execution against Smith, the owner, the same as if no mortgage had ever been granted; and, if full faith and credit are to be given to the judicial proceedings in Louisiana (as to which see Green v. Van Buskirk, 5 Wall. 307, 18 L. Ed. 599; Id., 7 Wall. 139, 19 L. Ed. 109), the purchaser in good faith at such execution sale took title to the property. But it is not necessary in this case to go to this extent to negative appellant's right to recover. The mules in question were removed to a parish in Louisiana adjoining Cass county, Tex., where the appellant and his debtor both lived, and were allowed to remain in Louisiana for nearly three years without any assertion or notice whatever of appellant's mortgage rights; and this, taken in connection with the fact that Smith's debt to appellant was long past due, was such laches as, in our judgment, precludes the appellant from now asserting his title on the unlawful and surreptitious return of the mules by Smith to Cass county, Tex. The Texas statute under which appellant claims his lien reads as follows:

"Every deed, mortgage, or other writing respecting the title of personal property hereafter executed, which by law ought to be recorded, shall be recorded in the clerk's office of the county court of that county in which the property shall remain; and if afterwards the person claiming title under such deed, mortgage or other writing shall permit any person in whose possession such property may be, to remove the same or any part thereof out of the county in which the same shall be recorded, and shall not, within four months after such removal, cause the same to be recorded in the county to which such property shall be removed, such deed, mortgage, or other writing, for so long as it shall not be recorded in such last mentioned county, and for so much of the property aforesaid as shall have been removed, shall be void as to all creditors and purchasers thereof for valuable consideration without notice." 2 Sayles' Ann. Civ. St. art. 4651.

If the mules had been removed to an adjoining county in Texas, and the appellant had remained quiet for four months, he would undoubtedly, under the above statute, have lost his lien, as against purchasers

for a valuable consideration, without notice. While it is very true that appellant could not have made a valid record of his lien in Louisiana, yet with diligence he could have there asserted his claim by otherwise giving notice; and, as his claim was long past due, he could have brought a suit in the Louisiana courts, and, if his claim was valid, have obtained judgment, and, on execution, could have subjected the mules to the satisfaction of his claim long before the appellees' rights attached. In his evidence, appellant admits that he had learned that Smith had taken the mules to Louisiana, but he does not say when he learned the fact; nor does he testify to any diligence whatever in regard to asserting his lien. If, in order to preserve his lien when the mortgaged property is removed to an adjoining county in the same state, diligence on the part of the mortgagee in the assertion of his rights is required, a fortiori diligence in the assertion of his right is required when the mortgaged property is removed to an adjoining parish in another state, where such mortgages are not enforced. This disposes of the first assignment of error, and also of the second, which asserts the same contention in another form.

The third and fourth assignments of error, which assert the proposition that Bentley & Co. had only a lien on the mules in controversy to secure a debt, which lien was void under the law of Louisiana, and the fifth and sixth assignments of error, which deny title of Bentley & Co. to two of the mules in controversy, are none of them well taken, because they are not supported by the facts as shown by the evidence, and hereinbefore recited.

The seventh assignment of error, to the effect that the court erred in granting to W. J. Bentley & Co. affirmative relief to the extent of awarding them a judgment for $70 damages, is well taken, because there are neither pleadings nor evidence to warrant such judgment.

This disposes of all errors assigned, and our conclusion on the whole case is that the decree appealed from should be amended by striking out the judgment for $70 damages, and, as so amended, the same should be affirmed, at costs of the appellees, and it is so ordered.