BANCO DE MEXICO, SUCURSAL EN NUE-
VO LAREDO, TAMAULIPAS, MEXI-
CO, v. DA CAMARA.

No. 8921.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 30, 1932.

Rehearing Denied Jan. 4, 1933.

Gibson & Blackshear, of Laredo, for appellant.

Phelps & Phelps, of Laredo, for appellee.

FLY, C. J.

Appellee instituted this suit against appellant, a corporation domiciled in Nuevo Laredo, state of Tamaulipas, republic of Mexico, in a district court of Webb county, Tex., to recover the value of an automobile, sold by appellee to Frederico Pacheco, who lived in Webb county, and who, in violation of a mortgage given on the car, had removed it from

Texas to Mexico. It was alleged in the petition: "Plaintiff further alleges that while defendant is without the jurisdiction of the court that it has money and funds within the jurisdiction of the Court and against the holder of said money and funds, plaintiff is suing out a writ of garnishment and impounding the same, that out of such funds the amount awarded plaintiff by the judgment of this Court may be made."

■ There are no objections urged to the findings of fact of the trial judge, and they will be adopted by this court, except as may be modified or changed herein.

"J. B. Da Camara, a dealer in automobiles residing and having his place of business in Laredo, Webb county, Tex., on the 7th day of August, 1930, sold and delivered to Frederico Pacheco, one certain Dodge truck and trailer at a total sales price of $1,125, $250 cash and eleven notes for $50 each and one for $325; notes due monthly with interest at 10 per cent. from August 7, 1930, until paid. At the time of the conversion hereinafter mentioned, six of the $50 notes had been paid, and there remained unpaid five $50 notes and the note for $325, or a total sum of $575 unpaid. Pacheco executed and delivered to Da Camara a chattel mortgage on the truck and trailer to secure the deferred payments, and which chattel mortgage was forthwith registered with the county clerk of Webb county, Tex.

"Pacheco took this truck and trailer to Nuevo Laredo across the Rio Grande from Laredo, Tex. He paid the import duties at the Mexican customs and there filed an invoice given him by Da Camara, which set forth the terms of payment and showed the installments due on the purchase price.

"On the 16th day of February, 1931, Pacheco executed a bill of sale covering this truck and trailer with other cars to the defendant bank, which is a Mexican corporation; Pacheco being at that time indebted to the defendant for past advances in the sum of 25,000 pesos. I find no delivery of the truck and trailer was made by Pacheco to the defendant, that there was no consideration paid him, but that an agreement existed whereby Pacheco would have some four months to pay his debt; delivery being contemplated in the event he failed to pay the same. Pacheco was then insolvent.

"On March 3, 1931, the defendant, acting through its manager, without any process of Mexican law, sent officers to seize this truck and trailer with others belonging to Pacheco, and forcibly, and without his consent, seized the same and took possession thereof.

"On March 7, 1931, the plaintiff, having been apprised of the seizure of the truck and trailer, notified the defendant and its manager that he held a chattel mortgage lien against said truck and trailer and demanded that defendant surrender same to him that he might subject it to sale under the terms of the chattel mortgage, and so collect his indebtedness against Pacheco. The manager for the defendant, with full knowledge of the facts, refused plaintiff's demands, and on March 17, 1931, credited Pacheco's account on the books of the bank with the sum of 10,000 pesos, the amount named in the bills of sale for the several trucks.

"This suit was filed on March 7, 1931, and on that date, a writ of garnishment was served on the Laredo National Bank and the defendant afterwards by answer submitted its person to the jurisdiction of the court.

"The value of the truck and trailer at the time and place of conversion was $750 and plaintiff's debt or interest in the truck and trailer on the 7th day of March, 1931, the date of conversion, was $608.

"Previous to the 3d day of March, 1931, the date defendant seized the truck and trailer, it was informed of the debt due the plaintiff by Pacheco.

"No law of Tamaulipas, Mexico, on the subject of 'Conversion' was either alleged or offered in evidence."

■ This suit is based upon the fact that appellant took possession of and appropriated to its own use property on which appellee had a chattel mortgage, of which appellant had actual knowledge at the time it seized and appropriated the property. Under the laws of Texas, the appropriation of the property was unlawful and constituted conversion, but those acts were not done in Texas, and consequently constituted no cause of action in Texas, unless they constituted a cause of action under the laws of Mexico. Liens on personal property are not recognized in Mexico, and neither is the delivery of personal property essential or necessary to a sale of such property. It was shown that under the laws of Mexico no such action as that of conversion is recognized, such action finding no place or support in the civil law. The truck was sold by Pacheco to the Banco de Mexico in Nuevo Laredo, and was taken possession of and appropriated by the bank in Mexico.

As shown in this and other cases that involve the laws of Mexico, great difficulty is experienced in arriving at what the laws are on any given subject, and that difficulty is often heightened and increased by efforts to obtain an explanation of the laws from those who might reasonably be supposed to be acquainted with the laws. According to the Mexican attorney who testified as to Mexican laws, they are so dissimilar to Texas laws as to be incapable of enforcement in the courts of this state. Mexican Nat. Ry. Co. v. Jackson, 89 Tex. 107, 33 S. W. 857, 860, 31 L. R. A. 276, 59 Am. St. Rep. 28. We quote from the Supreme Court in that case:

"The decisions of this court (well sustained by high authority) establish the doctrine that

the courts of this state will not undertake to adjudicate rights which originated in another state or country, under statutes materially different from the law of this state in relation to the same subject. [St. Louis, I. M. & S.] Railway Co. v. McCormick, 71 Tex. 660, 9 S. W. 540 [1 L. R. A. 804]; [Texas & P.] Railway Co. v. Richards, 68 Tex. 375, 4 S. W. 627.

"Many difficulties would present themselves, in an attempt to determine the meaning of the Mexican law, and to apply it in giving redress to the parties claiming rights under it. We understand the Mexican courts are not governed by precedent, and we have no access to reports of adjudicated cases of those courts, from which we could ascertain their interpretation of these laws. The language of some of the articles quoted is ambiguous, and we find great difficulty in determining what would be a proper interpretation of the law. We might or might not give the same effect to the language that is given to it in the courts of Mexico. There could be no reasonable certainty that the parties' rights would be adjusted here as they would be if the case were tried in the courts of that country, which is their right; for it is well settled that, if one state undertakes to enforce a law of another state, the interpretation of that law as fixed by the courts of the other state is to be followed. This difficulty of itself furnishes a sufficient reason for the courts of this state to decline to assume jurisdiction of this class of cases."

 Appellant did not invade, impair, or destroy any rights of appellee in the truck in Texas, but all acts took place in Mexico, and, of course, such trespasses and invasion of rights must be measured by the laws of the country in which they occurred. The bill of sale to the property was made in Mexico; the property was seized and appropriated in Mexico. There is no such action as that of conversion in Mexico, and it follows that appellant cannot be dragged by an attachment of its property into a foreign country and have its rights adjudicated by foreign laws. Of course, the courts of Mexico were and are open to appellee to prosecute any rights he may have under the laws of Mexico. Appellant has not violated in Texas any rights of appellee in the personal property, and appellee could not assert such rights in Mexico as are secured to him by a law unknown to Mexico and unenforceable there. The laws of Mexico, as proved, give an adequate remedy to appellee for any wrongs sustained by him in that country, and appellant has the right to be heard in the courts of its country.

The laws of Mexico do not create or recognize the right of liens by mortgage or otherwise on personal property, and, when appellee's property was carried into Mexico, no lien could be asserted against an inhabitant of that country. It was totally inoperative in Mexico, and appellant did not appropriate property on which appellee had any claim in Mexico. We quote from the case of Greene v. Bentley (C. C. A.) 114 F. 112, 114:

"The appellant contends in his first assignment of error that a valid lien in his favor having been fixed on the mules in Cass county, Tex., the lien could not be devested or destroyed by Smith's removing the mules into Louisiana. As against Smith, this proposition is probably correct; but as against Bentley & Co., who acquired the mules in Louisiana in good faith and without notice, and under the circumstances shown by the evidence, it is not necessarily correct. Chattel mortgages are unknown to the laws of Louisiana, and cannot be enforced in that state. Delop v. Windsor, 26 La. Ann. 185. It would seem, therefore, that when the mules in controversy were moved into Louisiana, with or without the consent of the appellant, they became subject to the laws of that state, and the lien of the Texas mortgage lapsed, or at least remained in abeyance, as long as the mules remained in Louisiana. It follows that the mules in Louisiana were subjected to seizure and sale under execution against Smith, the owner, the same as if no mortgage had ever been granted."

 There is no merit in the claim that appellant lost any rights under Mexican law by appearing and endeavoring to prevent the unlawful appropriation of the property by the inhabitant of a foreign country. Appellant appeared only to claim that its property was not subject to seizure under process from a Texas tribunal.

The case of Mendiola v. Gonzales (Tex. Civ. App.) 185 S. W. 389, is relied upon by appellee, but that opinion clearly distinguishes itself from this case, and is not authority in favor of appellee. No laws of Mexico were proved in that case.

The judgment is reversed, and the cause dismissed from this and the district court for want of jurisdiction.