## COMPANIA MEXICANA REDIODIFUSO-RA FRANTERIZA et al. v. SPANN.

District Court, N. D. Texas, Dallas Division.
Nov. 14, 1941.

908

L. E. Elliott, of Dallas, Tex., for plaintiffs.

C. W. Starling, of Dallas, Tex., for defendant.

ATWELL, District Judge.

Somewhat amplifying, by request, the oral opinion rendered at the conclusion of testimony, I call attention to the fact that this is a suit upon a judgment of a high nisi prius court of the Republic of Mexico, affirmed by an intermediate appellate court, and by the Supreme court of that nation.

Defendant Spann employed a Mexican attorney who instituted suit against the plaintiff in this cause for alleged defamation for $50,000. Spann was cast in that suit by the courts above mentioned. Under the statutes of Mexico, the defendant in that action was granted $6,000 in the way of costs against Spann. For that $6,000 judgment, the plaintiff here is seeking to secure a judgment against Spann.

Defendant Spann having requested a jury in this court, and having pleaded that he was not represented by an attorney in the Mexican court, as well as other matters which the court conceives to be law questions rather than fact issues to be determined by a jury, the court permitted testimony upon the attorney issue.

As I have already indicated, that testimony precluded any possibility of there being any issue with respect to it. He went to Mexico and chose his own attorney and entered into a written power-of-attorney with him. Cruz v. O'Boyle, D.C., 197 F. 824; Ritchie v. McMullen, 159 U.S. 235, 241, 16 S.Ct. 171, 40 L.Ed. 133.

The big question is raised by the cases of Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462, which the defendant contends must rule this decision.

If we surrender all of our tenacious holding for the independence of the national court, and the rule of comity, which courts have appropriately recognized, even though there is no binding force to the rule, there is still nothing to be found in the Texas decisions which show any marked public policy in this state against the enforcement of a judgment of this sort.

In 46 A.L.R. 450, it is stated that: "The modern tendency in this country is to recognize foreign judgments in personam as conclusive, where they are rendered on the merits, in foreign courts having jurisdiction of the parties." Of course, such a judgment does not come clothed with "full faith and credit." Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L. Ed. 278, 132 A.L.R. 1357. In Mexico the system of reciprocity has been adopted by the code of 1884 as the governing principle. Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95.

Having permitted the collateral attack upon the judgment heretofore mentioned, and having found no merit in it, we, therefore, stand with the solemn judgment of a nation so situated asking for its recognition.

It is a friendly nation. We are at peace with it. Its citizens come here and engage in extensive commercial transactions, and our citizens go there and do likewise. Each uses the courts of the other.

There is no summary activity against the defendant which was not justified by the laws of that country. By reason of his American citizenship, Spann was entitled to no favoritism when he entered the Mexican court. Its statutory cost penalties were general in application and operated against its own citizens as well as against other nationals. None of the exceptions, which preclude the recognition of a foreign judgment, are present. The court was one of large jurisdiction. Its proceedings were scrutinized and affirmed by superior and higher courts. There is no reason why the general rule that a judgment valid by the laws and practice of the country where rendered, should not apply here.

If we square it with the rule which is being constantly pressed by our Supreme court, with Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, as the foundation, we find no well marked public policy in Texas against assessing costs against an unsuccessful plaintiff in the manner followed by the Mexican law.

Such cases as Texas & P. R. Co. v. Richards, 68 Tex. 375, 4 S.W. 627; Strawn Mercantile Co. v. First National Bank, Tex.Civ.App., 279 S.W. 473; Burg v. Knox, Mo.App., 54 S.W.2d 797; Johnson v. Employers Liability Assur. Corp., Tex.Civ.App., 99 S.W.2d 979; St. Louis, I. M. & S. Ry. Co. v. McCormick, 71 Tex. 660, 9 S.W. 540, 1 L.R.A. 804, and Banco De Mexico v. Da Camara, Tex.Civ.App., 55 S.W.2d 631, afford us no comfort or light upon the particular subject here. American National Ins. Co. v. Turner, Tex.Civ.App., 226 S.W. 487, is slightly more in point.

Attorneys' fees and costs of litigation for the sued party are not only a coming but a present harvest in Texas. There are many cases which suggest that the plaintiff who brings an illy-founded suit is sufficiently penalized when he is compelled to pay the costs, but there are many evidences of a departure from that penalty as an exclusive punishment.

We have a statute in Texas allowing twelve per cent penalty plus attorneys' fees against insurance companies which deny liability. There are many provisions for costs and attorneys fees in the new Rules of Civil Procedure, 28 U.S.C.A. following section 723c, against an unsuccessful movant. The Texas statute provides for certain fees when the suit is on a small claim, Art. 226, R.S.Texas; or, for wages, Art. 5158, R.S.Texas; and when against utilities, Art. 6062, R.S.Texas.

That we do not have in Texas a statute which authorizes the imposition of costs which may include the defender's expenditure for an attorney will not sustain the claim that it is against the public policy of Texas for such a judgment to be entered, unless that claim is supported by a decision or statute. The class of the suit, and its complexion, is not to be taken as determinative of its objectionableness so as to require a domestic court to deny recovery upon a foreign judgment granting such recovery.

The "public policy" of a state must be defined, diagramed, well-pointed. The very words, themselves, so indicate. Courts do not deal with prophecy. They deal only with the present.

Union Terminal Co. v. Turner Construction Company, 5 Cir., 247 F. 727, 11 A.L.R. 880, dealt with a Florida statute, and is not at all helpful as showing any "public policy" in Texas. That case shows that certain Texas attorneys' fees statutes were declared to be unconstitutional by the Supreme court of the United States, in Gulf, C. & S. F. R. Co. v. Ellis, 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666; Missouri K. & T. R. Co. v. Cade, 233 U.S. 642, 34 S.Ct.

678, 58 L.Ed. 1135, but contained no observation whatever with reference to the matter we are discussing.

The Klaxon case ruled that a Delaware federal court need not add interest to a New York contract in accordance with a New York statute, if the Delaware law was against such procedure.

The Griffin decision instructs that a Texas citizen who had sought and secured moneys from New York citizens for his use in Texas, allowing a policy of insurance to be written on his life as additional security, did something that was against the public policy of Texas and the federal court of that state must not deprive his estate of the proceeds of the policy, since there was no insurable interest in favor of the New York citizens.

In each instance there was no doubt as to the language the courts of the two states had spoken with reference to such matters. That certainty is not present in the instant case.

It would seem appropriate that judgment go for the plaintiff.