HUGHES, J.
 

 12This is an appeal by a judgment debtor from a district court judgment making ex-ecutory a judgment first rendered in Sweden and then purportedly made a judgment of the State of Oregon, along with an additional judgment rendered in Oregon. For the reasons that follow, we vacate the district court judgment and remand with instructions.
 

 FACTS AND PROCEDURAL HISTORY
 

 Plaintiffs, Baker & McKenzie Advokat-byra (“BMA”), obtained a default judgment in Stockholm, Sweden, against the defendant, Thinkstream Incorporated (“Thinkstream”), which was rendered on October 31, 2005, and subsequently “transcribed as a judgment” in the State of Oregon on April 20, 2006. A supplemental judgment for post-judgment interest was also issued in Oregon on March 14, 2007. On September 27, 2007 BMA filed a petition in the 19th Judicial District Court to make these judgments executory in Louisiana under the provisions of LSA-R.S. 13:4241 et seq. An ex parte judgment was issued by the 19th J.D.C. on October 1, 2007, making the out-of-state judgments executory, ordering that notice be issued to Thinkstream, and decreeing these judgments enforceable thirty days after the mailing of the notice of filing by the clerk of court as set forth in LSA-R.S. 13:4243.
 

 BMA appended to its 19th J.D.C. petition a certification by the Judicial Department of Oregon, Washington County, that
 
 *1112
 
 the attached copy of “C061603CV has been compared with the original and that it is a correct transcript therefrom, and the whole of such original transcript as the same appears of record” in the Washington County Circuit Court, clerk’s office. The certification was signed by the court clerk, Travis Castle, and also signed by presiding circuit judge, Thomas W. Kohl, who certified that the Rcourt clerk was the proper custodian of the records; the court clerk thereafter signed a further attestation that Judge Kohl was the presiding judge of the court. An April 20, 2006 “Transcription of Foreign Judgment” designated as “Case No. C061603CV” next appears in the record, stating that a default judgment was rendered on October 31, 2005 in Stockholm, Sweden, in favor of BMA and against defendant Thinkstream, in the amount of 294,800 Sweden Kronors with interest on this amount “pursuant to Section 6 of the Swedish Interest Act” from July 7, 2002 until paid, and in the additional amount of 20,450 Sweden Kro-nors “of which SEK 20,000 is for own [sic] work performed and SEK 450 for application fee,” with interest thereon from October 31, 2005 until paid. This transcription further provided: “The transcription of the foreign judgment is based on the authenticated foreign judgment attached hereto, the Affidavit of John H. Chambers and the Affidavit of Jonas Benedictsson filed herewith.”
 
 [1]
 

 A certification by Nils Uggla was appended to the “Transcription,” stating:
 
 [2]
 

 NOTARIUS PUBLICUS
 

 I, the undersigned, Nils Uggla Notary Public of the City of Stockholm, Sweden, hereby certify,
 

 that
 
 the English document is issued and signed by David Kendall, authorised public translator,
 

 that
 
 the Swedish document is a true copy of the original document.
 

 that
 
 the Swedish document in original is issued and signed by Henrik Lagergren, on behalf of Stockholm City court.
 

 Stockholm, Sweden, 2005-12-14
 

 |4Ex officio:
 

 [handwritten signature]
 

 Nils Uggla
 

 PO Box 3098 S103 61 Stockholm +46 (0) 8 20 59 90
 

 The October 31, 2005 Swedish judgment was attached to Nils Uggla’s certification, along with the translation by David Kendall dated December 8, 2005. The translation stated that a default judgment was rendered against Thinkstream; and the judgment amounts were also set forth (mirroring the amounts stated in the April 20, 2006 “Transcription of Foreign Judgment” provided to the Oregon court). Mr. Kendall’s translation further stated that the Swedish court issued the following reasons in support of judgment: “The prerequisites are met to grant the plaintiffs request by a default judgment.”
 

 Another certification follows in the district court record issued by Oregon’s Washington County court clerk, Travis Castle (whose official status was again affirmed by Judge Kohl, with his status reciprocally attested to by Mr. Castle), verifying that the annexed copy from “C061603CV” is a correct transcription of the original court document. A “Statement in Support of Transcription
 
 *1113
 
 of Foreign Judgment,” prepared by BMA’s Oregon counsel, was attached to this certification, and reiterated the Swedish default judgment amounts; additionally, it stated that Thinkstream owed prejudgment interest in the amounts of 124,745.17 Sweden Kronors and 976.77 Sweden Kronors, along with a $46.00 (U.S. Dollars) filing fee. This statement further provided:
 

 The judgment debtor has the option to pay the judgment or award, including the interest owed on the date of the judgment and the post-judgment interest, unless the parties have agreed otherwise as according to ORS 24.270, in the amount of United States dollars that will purchase that foreign money on |sthe conversion date at a bank-offered spot rate at or near the close of business on the banking day before the day of payment.
 

 If the judgment debtor pays the judgment through a court under ORS 18.235, the payment must be in United States dollars as provided in ORS 24.290(2).
 

 The foreign judgment is wholly unsatisfied. Plaintiff respectfully requests recording and enforcement of the foreign Default Judgment in this Court.
 

 The district court record next contains a third Oregon court certification confirming the validity of an attached “Supplemental Judgment and Money Award,” which stated:
 

 Based on the Order Imposing Monetary Sanctions,[
 
 3
 
 ] entered contemporaneously herewith, it is hereby ADJUDGED that plaintiff is entitled to a supplemental judgment in its favor, and against defendant Thinkstream Incorporated, in the amount of$2,500.00.[
 
 4
 
 ]
 

 This supplemental judgment was signed by Oregon’s Washington County Circuit Court Judge, Marco A. Hernandez, on March 14, 2007.
 

 In response to BMA’s 19th J.D.C. petition, Thinkstream filed an answer denying the allegations of BMA’s petition, and requesting a contradictory hearing. Think-stream further stated in its answer that the out-of-state judgments are not entitled to full faith and credit in Louisiana because they were rendered in courts lacking in personam jurisdiction over Thinkstream and lacking subject matter jurisdiction over any alleged dispute between Think-stream and BMA. Thinkstream further alleged that “at no point in time did Think-stream contract with [BMA] nor authorize it to act as agent for Thinkstream nor authorize it to incur legal costs and expenses on behalf of Thinkstream.” Think-stream also asserted that the judgments were obtained by BMA by means of “extrinsic fraud,” stating that BMA falsely and unlawfully “urged the existence of an agency agreement or other |r,contractual relationship between it and Thinkstream, thereby convincing the Stockholm Court that it had proper jurisdiction over the subject matter and person of Think-stream.” Thinkstream maintained that the Swedish court had no jurisdiction over the case before it. Thinkstream further asserted that BMA’s representations to the Oregon court “compounded the fraud” and thus the Oregon court judgments were “infected with” and “the product of extrinsic fraud” as BMA knew of the jurisdictional deficiencies and failed to inform the Oregon court.
 

 Based on Thinkstream’s allegations and request for a contradictory hearing, the
 
 *1114
 
 19th J.D.C. set the matter for hearing on January 22, 2008; which was later continued to February 25, 2008. Counsel for Thinkstream thereafter sought an additional continuance of the hearing, citing BMA’s failure to respond to its December 2007 discovery requests, the responses to which Thinkstream stated were “necessaiy in order to try the matters at issue in the pending rule.” The contradictory hearing was continued again to April 14, 2008.
 

 On March 8, 2008 BMA filed an “Ex Parte Motion and Order to Submit Exhibits under Seal,” wherein it was asserted that “as Thinkstream contests the issue of its retention of [BMA], documents pertaining to the retention, as well as the work performed in connection with the retention, are relevant to establish the retention’s existence” and that “out of an abundance of caution, [BMA] requests that the documents be filed under seal in order to protect any privileged, confidential and/or proprietary information contained within and/or referenced to in the documents.” The motion was granted by the [ ^district court, and numerous documents, including various items of correspondence, were filed into the record under seal.
 
 [5]
 

 On April 4, 2008 Thinkstream filed a motion to compel discovery, maintaining that the underlying Swedish judgment in this case was invalid and unenforceable and asserting that BMA had the burden to prove that the foreign tribunal had personal jurisdiction. Thinkstream further contended that it had the right to discover what evidence BMA possessed that tended to establish Thinkstream had the necessary minimum contacts with Sweden. Thinkstream conceded that BMA produced “some documents which appear to be responsive to the original request for production” but asserted that no formal response pleading was provided and that BMA failed to respond in any way to its second set of discovery, tendering instead an objection to discovery. The 19th J.D.C. was requested to compel BMA to respond “in a full and complete fashion” to all of the discovery with which it was served. Copies of two discovery requests, one propounded in December 2007 and the other in February 2008, were appended to the motion and sought an extensive array of documents that in any way related to the subject matter of the lawsuit, and which included: communications between BMA and Thinkstream, evidence relating to the Swedish court’s personal jurisdiction over Thinkstream, evidence supporting the judgments at issue, evidence of | sservice of process or other notices to Thinkstream, and copies of all pleadings filed in Sweden and Oregon. Two requests for admissions were also made to BMA: (1) “Admit that the bill for attorney’s fees dated May 17,
 
 *1115
 
 2002 includes services rendered by attorneys in Luxemburg;” and (2) “Admit that the bill for attorney’s fees dated May 17, 2002 includes services rendered by attorneys in the Netherlands.”
 

 BMA filed an objection to Thinkstream’s discovery, contending the discovery was overbroad, impermissibly vague, unduly burdensome, and that the requests sought non-discoverable information not relevant to the enforcement of the judgment. BMA further asserted that Thinkstream “is not entitled to conduct discovery into the merits of the claims.”
 

 Prior to a hearing on Thinkstream’s motion to compel discovery, the district court rendered judgment in favor of BMA on April 14, 2008, issuing the following oral reasons for judgment:
 
 [6]
 

 On the showing made by the plaintiff, I find that there is jurisdiction, was jurisdiction in Sweden for the transaction that the court ruled on; therefore, I’m going to deny the answer and make the judgment executory.
 

 Thereafter, on May 27, 2008, the trial court signed a judgment stating:
 

 IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Judgment dated October 31, 2005 of the District Court of Stockholm[’]s Tins-gratt[] Division 2, as transcribed on April 20, 2006 by the Judgment of the Circuit Court of Washington County Oregon, as well as the Supplemental Judgment and Money Award of the Circuit Court of Washington[ ] County Oregon dated March 14, 2007, be and are hereby made executory.
 

 Thinkstream has suspensively appealed the district court judgment, asserting the following assignments of error: (1) the trial court erred in failing to make the requisite inquiry as to whether the question of personal | ¡jurisdiction had been fully and fairly considered by the courts in Sweden and Oregon that rendered the original judgments; (2) the trial court erred when it apparently concluded that there were sufficient minimum contacts for the exercise of personal jurisdiction over appellant Thinkstream in Sweden; and (3) the trial court erred in refusing to require the plaintiff to make any showing regarding the contents of the pleadings filed in the foreign jurisdictions, in particular, whether the pleadings contained any allegations regarding minimum contacts or personal jurisdiction.
 

 DISCUSSION
 

 BMA filed this suit on the basis of the Enforcement of Foreign Judgments Act, LSA-R.S. 13:4241 through 13:4248, which was enacted by 1985 La. Acts, No. 464, § 1, in conformity with the federal Uniform Enforcement of Foreign Judgments Act (1964 revision). Section 4242 of Act 464 allows any properly authenticated “foreign judgment” to be made executory in this state via an ex parte petition and thereafter treated in the same manner as a judgment of this state. A “foreign judgment” is defined by LSA-R.S. 13:4241 as “any judgment, decree, or order of a court of the United States or of any other court which is
 
 entitled to full faith and credit in this
 
 state.”
 
 [7]
 
 (Emphasis added.)
 

 
 *1116
 
 |inThis court in
 
 Ault v. Bradley,
 
 564 So.2d 374, 377 (La.App. 1 Cir.),
 
 writ denied,
 
 569 So.2d 967 (La.1990), in discussing what type of judgment is entitled to full faith and credit, stated:
 

 Considering the definition of “foreign judgment,” given in LSA-R.S. 13:4241, as a judgment that is entitled to full faith and credit in this state, the threshold inquiry in any proceeding under the Enforcement of Foreign Judgments Act is whether the judgment sought to be recognized is one that is entitled to full faith and credit.
 

 A state may deny full faith and credit to a judgment rendered by a court
 
 of another state
 
 only when it is shown that the court which rendered the judgment lacked jurisdiction over the parties or the subject matter. There is a general presumption that a court
 
 of a sister state
 
 had jurisdiction to render the judgment in the case before it, and it is incumbent upon the person attacking the judgment to show by clear and positive proof that the rendering court was without jurisdiction.
 

 (Emphasis added; citations omitted.)
 

 Further, the supreme court stated in
 
 Schultz v. Doyle,
 
 2000-0926, pp. 9-10 (La.1/17/01), 776 So.2d 1158, 1164:
 

 The Full Faith and Credit Clause, Article IV, Section 1, of the Constitution of the United States, mandates that a judgment
 
 of a state court
 
 should have the same credit, validity, and
 
 effect in
 
 every other court of the United States that it has in the state where it is pronounced. The Supreme Court of the United States has continuously interpreted the Full Faith and Credit Clause to mean that full faith and credit is to be accorded only when the jurisdiction of the court in
 
 another state
 
 is not impeached, either as to the subject matter or the person. Therefore, a
 
 state court judgment
 
 can be made a judgment
 
 in a sister state
 
 “only if the court purporting to render the original judgment has power to render such a judgment.”
 

 (Emphasis added; citations omitted.)
 

 Article TV, Section 1 of the U.S. Constitution provides: “Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of
 
 every other State.
 
 And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.” (Emphasis added.)
 

 InThe Supreme Court has traditionally interpreted the Full Faith and Credit Clause to mean: that which has been adjudicated in one state and is res judicata is also to the same extent in every other state.
 
 See Magnolia Petroleum Co. v. Hunt,
 
 320 U.S. 430, 437-38, 64 S.Ct. 208, 213, 88 L.Ed. 149 (1943). In furtherance thereof, 28 U.S.C.A. § 1738 provides, in pertinent part:
 

 The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of
 
 *1117
 
 a judge of the court that the said attestation is in proper form.
 

 Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.
 

 While the Full Faith and Credit Clause applies to the recognition and enforcement of judgments among
 
 sister states,
 
 it does not apply to judgments rendered in
 
 foreign countries. Society of Lloyd’s v. Reinhart,
 
 402 F.3d 982, 993 (10th Cir.2005),
 
 cert. denied sub nom. Bennett v. Society of Lloyd’s,
 
 546 U.S. 826, 126 S.Ct. 366, 163 L.Ed.2d 73 (2005);
 
 Jaffe v. Accredited Surety and Casualty Co.,
 
 294 F.3d 584 (4th Cir.2002).
 
 See also Becker v. Becker,
 
 143 Misc.2d 500, 541 N.Y.S.2d 699 (Sup.Ct.1989);
 
 Multibanco Comermex, S.A. v. Gonzalez H.,
 
 129 Ariz. 321, 630 P.2d 1053 (App.1981).
 

 Both the
 
 Becker
 
 and
 
 Multibanco
 
 decisions hold that their respective state’s “foreign judgment” law does not accord the judgments of foreign countries full faith and credit. In a one-page decision, the
 
 Multibanco
 
 court reasoned:
 

 112Is a judgment of a Mexican court a “foreign judgment” within the meaning of A.R.S. Sec. 12-1701 of the Uniform Enforcement of Foreign Judgments Act? We hold that it is not and affirm.
 

 Appellant filed in the Superior Court of Santa Cruz County, eight Mexican judgments which it sought to enforce under the Uniform Enforcement of Foreign Judgments Act, A.R.S. Sec. 12-1701 et seq. Pursuant to appellees’ motion, the trial court quashed the judgments.
 

 A.R.S. Sec. 12-1701 states that “ ‘foreign judgment’ means any judgment ... which is entitled to full faith and credit in this state.” Appellant contends that a judgment from Mexico is a foreign judgment and is entitled to full faith and credit. We do not agree. The “full faith and credit” that is referred to in 12-1701 is the full faith and credit that is required by the Constitution of the United States, Art. IV, Sec. 1, which states: “Full Faith and Credit shall be given in each State to ... judicial Proceedings of every other State....” This means that full faith and credit must be given to the judicial proceedings of a sister state but not to judgments from foreign countries.[
 
 8
 
 ]
 

 
 *1118
 

 Multibanco Comermex, S.A. v. Gonzalez H.,
 
 129 Ariz. at 321, 630 P.2d at 1053.
 

 | isThe recognition of the judgments of foreign countries is governed by principles of “comity.” Comity is the recognition that one country allows within its territory of the judicial acts of another country, having due regard both to international duty and convenience and to the rights of its own citizens or of persons who are under the protection of its laws. If the foreign country’s forum provides a full and fair trial before a court of competent jurisdiction, under a system of jurisprudence likely to secure an impartial administration of justice, and there is nothing to show either prejudice or fraud in procuring the judgment, the judgment should be enforced and not tried afresh. The practice of extending comity whenever the foreign court has proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy.
 
 S.C. Chimexim S.A. v. Velco Enterprises Ltd,.,
 
 36 F.Supp.2d 206, 210-11 (S.D.N.Y.1999) (citing in part
 
 Hilton v. Guyot,
 
 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895)). But such a judgment does not come clothed with full faith and credit.
 
 Compania Mexicana Rediodifusora Fronteriza v. Spann,
 
 41 F.Supp. 907, 909 (D.C.Tx.1941).
 

 Based on the foregoing, we conclude that LSA-R.S. 13:4241 et seq. does not authorize ex parte enforcement of the judgments of foreign countries in a Louisiana state court.
 
 [9]
 

 li^A judgment creditor nevertheless has a remedy to enforce a judgment rendered in a foreign country by filing an ordinary action in accordance with LSA-C.C.P. art. 2541, which provides:
 

 A. A party seeking recognition or execution by a Louisiana court of a judgment or decree of a court of the United States or a territory thereof, or of any other state, or of
 
 any foreign country may either seek enforcement pursuant to R.S. 13:4241, et seq., or briny an ordinary proceeding
 
 against the judgment debtor in the proper Louisiana
 
 *1119
 
 court, to have the judgment or decree recognized and made the judgment of the Louisiana court.
 

 B. In the latter case, a duly authenticated copy of the judgment or decree must be annexed to the petition.
 

 (Emphasis added.)
 

 We recognize that a reading of Article 2541 may give the impression that the provisions of LSA-R.S. 13:4241 et seq. are available to a petitioner seeking to make the judgment of a foreign country executo-ry in Louisiana. However, such a reading is in direct conflict with the express provisions of LSA-R.S. 13:4241 et seq.
 
 [10]
 

 The laws of statutory construction require that laws on the same subject matter must be interpreted in reference to each other. The legislature is presumed to have acted with deliberation and to have enacted a statute in light of the preceding statutes involving the same subject matter. Under our 11filong-standing rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction that harmonizes and reconciles it with other provisions dealing with the same subject matter. A statute must be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the Legislature had in enacting it.
 
 Louisiana Municipal Association v. State,
 
 2004-0227, p. 36 (La.1/19/05), 893 So.2d 809, 837.
 

 It is of interest that the same legislative act that promulgated LSA-R.S. 13:4241 through 13:4248 (1985 La. Acts, No. 464) also amended LSA-C.C.P. art. 2541. Pri- or to its amendment, Article 2541 read:
 

 A. A party seeking recognition or execution by a Louisiana court of a judgment or decree of a court of the United States or a territory thereof, or of any other state, or of any foreign country
 
 must
 
 bring an ordinary proceeding against the judgment debtor in the proper Louisiana court, to have the judgment or decree recognized and made the judgment of the Louisiana court.
 

 B.
 
 A
 
 duly authenticated copy of the judgment or decree must be annexed to the petition.
 

 (Emphasis added.)
 

 Act No. 464, § 2, eliminated “must” in Paragraph (A) and substituted “may
 
 ei
 
 
 *1120
 

 ther
 
 seek enforcement pursuant to R.S. 13:4241 et seq., or, ...” and in Paragraph (B), changed “A” to read “In the latter case a_” (Emphasis added.) In order to reconcile the current “either ... or” language of Article 2541 with the provisions of LSA-R.S. 13:4241 et seq., which restrict the ex parte procedure authorized therein to “foreign judgments” entitled to full faith and credit in this state, Article 2541 must be interpreted to allow use of the LSA-R.S. 13:4241 et seq. procedure only as authorized in LSA-R.S. 13:4241 et seq. When Article 2541 is read in conjunction with the express provisions of LSA-R.S. 13:4241 et seq., as directed by LSA-C.C. arts. 12 |u;and 13,
 
 [11]
 
 the more specific provisions of LSA-R.S. 13:4241 et seq. prevail.
 
 See Medine v. Roniger,
 
 2003-3436, p. 11 (La.7/2/04), 879 So.2d 706, 714.
 

 Since we rule herein that the judgments of foreign countries cannot be made executory in Louisiana via LSA-R.S. 13:4241 et seq., we conclude the district court erred in allowing BMA to proceed under LSA-R.S. 13:4241 et seq. with respect to the Swedish judgment.
 
 [12]
 

 Nevertheless, the “Supplemental Judgment and Money Award” rendered directly by the Oregon court in the principal amount of $2,500.00, would be entitled to enforcement pursuant to LSA-R.S. 13:4241 et seq. unless Thinkstream can establish a lack of personal jurisdiction as alleged. An exception to the full faith and credit mandate is recognized when the judgment debtor shows, by clear and positive proof, that the out-of-state court did not have personal jurisdiction over him under the jurisdictional laws of the that state.
 
 Harrah’s Club v. Mijalis,
 
 557 So.2d 1142, 1145 (La.App. 2 Cir.),
 
 writ denied,
 
 559 So.2d 1387 (La.1990).
 

 The right to seek a stay of the enforcement of an out-of-state judgment is authorized by LSA-R.S. 13:4244(B), and gives a judgment debtor an opportunity to present evidence at a contradictory hearing as to why enforcement of the judgment should be stayed.
 
 Morgan Building & Spas, Inc. v. Cutrer,
 
 97-0599, p. 5 (La.App. 1 Cir. 4/8/98), 711 So.2d 777, 780.
 
 See also Morgan Building & Spas, Inc. v. Cutrer,
 
 98-1504, p. 9 (La.17.App. 1 Cir. 7/29/99), 739 So.2d 990, 995. Paragraph (B) of LSA-R.S. 13:4244 provides: “If the judgment debtor proves on contradictory motion any ground upon which the execution of a judgment of a court of this state would be stayed, the court shall stay enforcement of the foreign judgment upon requiring security for satisfaction of the judgment as is required in this state.” This provision places the burden upon a judgment debtor to show a basis .for staying the enforcement of the out-of-state judgment. In order to meet this burden, a judgment debt- or should have access to discovery in order to obtain necessary evidence. Therefore, in the instant case we find the district court erred in failing to allow Thinkstream an
 
 evidentiary
 
 hearing on the issue of the enforceability of the $2,500.00 Oregon judgment, and in failing to grant timely relief to Thinkstream in its attempt to compel BMA to respond to the discovery requests propounded.
 

 
 *1121
 
 Finally, we note that Thinkstream has filed with this court a “Motion for Leave to Include Exhibits in Supplemental Appendix,” in which it seeks, to be allowed to append to its brief filed with this court copies of the numerous documents filed by BMA “under seal” in the district court, and to affix page numbers thereon for ease of reference of this previously unnumbered in-globo submission. In a February 25, 2009 action, another panel of this court referred Thinkstream’s motion to this panel for disposition. In light of our rulings herein, we find it unnecessary to entertain the supplemental index Thinkstream seeks to file and therefore deny the motion.
 

 CONCLUSION
 

 For the reasons assigned herein, the judgment of the district court in favor of Baker & McKenzie Advokatbyra is hereby vacated and the matter is remanded to the district court for further proceedings in accordance with the [ ^foregoing. We further instruct the district court to accord Thinkstream Incorporated an evidentiary hearing on the enforceability in this state of the March 14, 2007 Oregon judgment and to grant discovery to Thinkstream Incorporated in advance of the evidentiary hearing on this issue. All costs of this appeal are to be borne by Baker & McKenzie Advokatbyra.
 

 JUDGMENT VACATED; REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 . The transcription was signed by John H. Chambers, an Oregon attorney representing BMA; however, the referenced affidavits of Mr. Chambers and Jonas Benedictsson do not appear in the record on appeal.
 

 [2]
 

 . Though only a copy of this document appears in the 19th J.D.C. record, it appears that the original was affixed with a raised seal.
 

 [3]
 

 . No document entitled "Order Imposing Monetary Sanctions” appears among the documents filed with BMA's 19th J.D.C. petition.
 

 [4]
 

 . Additionally, post-judgment interest at the rate of nine percent was awarded on the principal judgment amount.
 

 [5]
 

 . The items "under seal” were accompanied by an affidavit purporting to certify that the documents were true and correct copies of the originals; however, the signature of the affiant, Leif Gustafsson, legal counsel employed with BMA, does not appear on the affidavit filed with the 19th J.D.C. We note that BMA appended a "sworn” copy of the Gustafsson affidavit to its appellate brief; however, the attachment was excised by this court’s clerk as violative of this court’s August 24, 1995 "Order” decreeing that "appellate briefs filed in this Court shall have attached thereto only '[a] copy of the judgment, order, or ruling complained of, and a copy of either the trial court's written reasons for judgment, transcribed oral reasons for judgment, or minute entry of the reasons, if given,' unless for good cause shown on written motion permission is granted by the Court.”
 
 See http:// www.la-fcca.org/attachments.htm.
 
 Further, we note that an appellate court must render its judgment upon the record on appeal; we cannot review evidence that is not in the record, nor can we receive new evidence.
 
 See In re Succession of Badeaux,
 
 2008-1085, p. 5 (La.App. 1 Cir. 3/27/09), 12 So.3d 348, 352,
 
 writ denied,
 
 2009-0822 (La.5/29/09), 9 So.3d 166;
 
 Pinegar v. Harris,
 
 2006-2489, p. 2 (La.App. 1 Cir. 5/4/07), 961 So.2d 1246, 1249.
 

 [6]
 

 . A minute entry in the record, dated on the same day as this April 14, 2008 ruling, indicates that Thinkstream’s motion to compel discovery was set for a June 2, 2008 hearing.
 

 [7]
 

 . Sections 4241 and 4242 of the Enforcement of Foreign Judgments Act provide in full:
 

 § 4241. Definition
 

 In this Part ‘‘foreign judgment” means any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state.
 

 § 4242. Filing and status of foreign judgments
 

 
 *1116
 
 A copy of any foreign judgment authenticated in accordance with an act of congress or the statutes of this state may be annexed to and filed with an ex parte petition complying with Code of Civil Procedure Article 891 and praying that the judgment be made executory in a court of this state. The foreign judgment shall be treated in the same manner as a judgment of a court of this state. It shall have the same effect and be subject to the same procedures, and defenses, for reopening, vacating, or staying as a judgment of a court of this state and may be enforced in the same manner.
 

 [8]
 

 . This conclusion is given further credence by the prefatory notes of the National Conference of Commissioners on Uniform State Laws on its approval of the original 1948 Uniform Enforcement of Foreign Judgments Act: "The mobility, today, of both persons and property is such that existing procedure for the enforcement of judgments in those cases where the judgment debtor has removed himself and his property
 
 from the state in which the judgment was rendered,
 
 is inadequate. By this act procedure is made available under which the judgment creditor can effectively obtain relief and at the same time adequate protection is given the judgment debtor to present any defense that can now be interposed to an action on such judgment.” Sarah L. Johnson,
 
 Validity, Construction, and Application of the Uniform Enforcement of Foreign Judgments Act,
 
 31 A.L.R.4th 706 (1984) (emphasis added). Upon adoption of the 1964 revision of the Uniform Enforcement of Foreign Judgments Act, the commissioners observed: "Court congestion is a problem common to all states. Overcrowded dockets, overworked judges and court officials, with attendant delays, inevitably tend to lower standards for the administration of justice. One of the things that contributes to calendar congestion is the Federal necessity of giving full faith and credit to the
 
 judgments of courts of other states.
 
 While there is no constitutional requirement that a debtor who has had a full due process trial in one state need be given a second full scale trial on the judgment in another state, this is the only course generally available to creditors. The
 
 *1118
 
 usual practice requires that an action be commenced on the foreign judgment. The full procedural requirements apply to the second action.”
 
 Id.
 
 (emphasis added). That the federal Uniform Enforcement of Foreign Judgments Act did not intend to apply to the judgments of foreign countries is further emphasized upon comparison with the provisions of the prior 1962 Uniform Foreign Money-Judgments Recognition Act, made specifically applicable to “foreign states,” defined as “any governmental unit
 
 other than
 
 the United States, or any state, district, commonwealth, territory, insular possession thereof, or the Panama Canal Zone, the Trust Territory of the Pacific Islands, or the Ryukyu Islands.” Thus, the 1962 Uniform Foreign Money-Judgments Recognition Act dealt with the judgments of foreign countries, while the Uniform Enforcement of Foreign Judgments Act dealt with judgments “foreign” to an individual state (i.e. out-of-state judgments entitled to full faith and credit under the U.S. Constitution).
 

 [9]
 

 .
 
 But see Rouffanche v. D’Spain,
 
 506 So.2d 218, 219 (La.App. 5 Cir.1987), stating that "[a] creditor with a foreign judgment can proceed against a debtor in Louisiana by ordinary action with citation and service, LSA-C.C.P. art. 2541, or by an expedited proceeding with notice of filing of the petition by certified mail, LSA-R.S. 13:4241, et seq.” (Footnotes omitted.) At issue in that case was the validity of a Louisiana district court judgment making executory a judgment rendered in France. Holding that the formalities required of either a proceeding pursuant to LSA-C.C.P. art. 2541 or LSA-R.S. 13:4241 et seq. were not complied with, the Fifth Circuit declared the district court judgment null and void. As the comments on the procedures available to enforce the French judgment were dicta and the two-page opinion did not squarely address the issue before this court, we do not find this decision to be persuasive authority in the instant case.
 

 [10]
 

 . Even though we hold herein that LSA-R.S. 13:4241 et seq. cannot be applied to make the judgment of a foreign country executory, the proponent of such a judgment nevertheless may utilize the ordinary proceeding authorized by LSA-C.C.P. art. 2541 to make such a judgment executory. We note the primary distinction between the procedure authorized by LSA-R.S. 13:4241 et seq. and the procedure authorized by LSA-C.C.P. art. 2541 is that an ordinary proceeding in accordance with LSA-C.C.P. art. 851 et seq. must be filed in the latter while an ex parte judgment is granted in the former in accordance with LSA-R.S. 13:4242. The ordinary proceeding afforded under LSA-C.C.P. art. 2541 is the same as that in any other ordinary proceeding and is therefore subject to the same rules for pleading and trial
 
 (Stephens Photo, Inc. v. Southern Portraits, Inc.,
 
 424 So.2d 1100, 1101 (La.App. 1 Cir. 1982)) and must be finalized by a judgment of the court
 
 (Lejeune
 
 v.
 
 Lejeune,
 
 310 So.2d 655, 656 (La.App. 1 Cir. 1975)); any proceeding that circumvents this procedure is fatally defective
 
 (Id.).
 
 We further note that in a LSA-C.C.P. art. 2541 proceeding, citation and service pursuant to LSA-C.C.P. 1202 et seq. is required, while under LSA-R.S. 13:4243(B) only a mailed notice of filing of the suit is required. And, in contrast to the ex parte grant of a judgment under LSA-R.S. 13:4242 (unless the judgment debtor seeks a contradictory hearing as provided in LSA-R.S. 13:4244), a trial is required in a LSA-C.C.P. art. 2541 proceeding.
 
 But, see also Delta National Bank of Yazoo City v. Holder,
 
 398 So.2d 1072 (La.1981) (holding that judgment in a LSA-C.C.P. art. 2541 proceeding may be obtained via motion for summaiy judgment in accordance with LSA-C.C.P. art. 966 in appropriate circumstances).
 

 [11]
 

 . These Civil Code articles provide:
 

 Art. 12. Ambiguous words
 

 When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.
 

 Art. 13. Laws on the same subject matter Laws on the same subject matter must be interpreted in reference to each other.
 

 [12]
 

 . We have found no Oregon judgment in the record on appeal which purports to make the Swedish judgment also a judgment of the Oregon court and thus entitled to full faith and credit as an Oregon judgment.